MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:    2014 ME 34
Docket:      Han-13-265
Argued:      December 17, 2013
Decided:     March 4, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.
Majority:    SAUFLEY, C.J., and LEVY, <u>SILVER</u>, and JABAR, JJ.
Dissent:     <u>ALEXANDER</u>, and MEAD, JJ.

ESTATE OF MICHAEL LEWIS

v.

CONCORD GENERAL MUTUAL INSURANCE COMPANY et al.

SILVER, J.

[¶1]  The Estate of Michael Lewis, by and through Michael's mother and personal representative, Angela Dorval, appeals from a summary judgment entered in the Superior Court (Hancock County, *A. Murray, J.*) in favor of defendants Concord General Mutual Insurance Company (Concord), Allstate Fire and Casualty Insurance Company (Allstate), and Property and Casualty Insurance Company of Hartford (Hartford).  The Estate contends that there are genuine issues of material fact concerning whether Michael had completed the purchase of the truck he was driving when he was killed in a two-vehicle accident.  The Estate also argues that, if a sale occurred, it was not complete because Michael was killed before he reached the age of majority and never had the opportunity to ratify the contract.  Alternatively, the Estate urges us to find that the other-owned-vehicle

2

exclusions in the Concord and Allstate policies are unenforceable. Because we conclude that genuine issues of material fact remain in dispute, we vacate the judgment.

## I. BACKGROUND

[¶2] On August 8, 2009, Michael was sixteen years old. That day, while he was with his friend Blake Parsons, he saw William Dodge's 1990 Ford F150 pickup truck on the side of the road with a "for sale" sign. Michael called Dodge's telephone number, which was listed on the sign, and he and Dodge discussed Michael's interest in purchasing the truck. They agreed on a price of $900.

[¶3] Later that evening, Michael returned with Parsons and gave Dodge an envelope containing cash. On the envelope, Michael had written "Money 4 truck $900," although Dodge later discovered that it contained only $800.[1] Dodge provided Michael with a signed bill of sale acknowledging receipt of $900. Dodge also gave Michael the keys, the truck's maintenance history, and the title. He did not sign the assignment of ownership section on the back of the title, nor did he fill

---

[1] Dodge testified that he later discovered that the cash Michael had provided was $100 short, but that he never had any intention of attempting to recover the $100. Michael's aunt, Audrey Hanley, testified that Dodge told her that there was $100 missing from the payment he received from Michael. However, in its first statement of material facts, Hartford stated that Michael paid Dodge $900 for the truck, and the Estate admitted this statement. Although the Estate attempted to qualify the same statement when Hartford filed its second motion for summary judgment, the court deemed the fact admitted for the purpose of summary judgment.

out the odometer disclosure statement.[2] Dodge left his license plates on the truck and left his insurance card in the glove compartment. Parsons, who overheard part of the conversation between Michael and Dodge, testified that the agreement was that Michael would be "allowed to use the truck with the registration as it was[,] and [Dodge] would leave [the] insurance on it until Michael got his own."

[¶4]  Michael had no further contact with Dodge. Michael maintained possession of the truck until the fatal accident, which occurred eleven days later. He had not registered or insured the truck. The truck still appeared to be registered in Dodge's name, and a Maine State Police Trooper found Dodge's insurance card in the truck while investigating the accident.

[¶5]  Michael's aunt, Audrey Hanley, called Dodge and informed him of the accident. She told Dodge that she knew that "his plates and insurance were still on the vehicle," which Dodge did not deny. At about this time—although it is unclear from the record whether it was before or after Dodge learned of the accident[3]—Dodge contacted Hartford, his insurer, and removed the truck from his insurance policy retroactive to the date Michael took possession of the truck.

---

[2]  Because of its age, the truck did not require a certificate of title; thus, Dodge was not legally required to sign the title or fill out the odometer disclosure statement in order to sell the truck. *See* 29-A M.R.S. §§ 652(13), 752-A (2013).

[3]  Hartford asserts that Dodge removed the truck from his insurance policy on August 21, 2009. However, Hanley testified that she contacted Dodge on August 22, 2009.

4

[¶6]  The driver of the other vehicle involved in the accident was insured by Hanover Insurance Company, which paid the Estate its $100,000 policy limit for liability.  Michael's mother, Angela Dorval, was insured by Concord at the time of the accident.  Michael's father, David Lewis, was insured by Allstate.[4]  The Concord and Allstate policies each provide for benefits in the amount of $100,000 per person for accidents involving uninsured or underinsured motorists.[5]  Michael was not a named insured under either policy, but he was covered as a resident family member for purposes of uninsured-motorist coverage under each policy.  The Concord and Allstate policies each contain other-owned-vehicle exclusions, which preclude coverage for bodily injury to an insured person injured or killed while driving or riding in a car that an insured person owns, but which is not insured.[6]  Dodge's Hartford policy provides for uninsured-motorist coverage in the amount of $500,000.  Dorval, on behalf of the Estate, sought uninsured-motorist

---

[4]  Michael's parents never married and did not live together.  Michael lived with his mother most of the time but spent some weekends at his father's house.

[5]  Although automobile insurance policies provide coverage for damages resulting from accidents with either uninsured or underinsured motorists, for the sake of simplicity we will refer to this coverage as "uninsured-motorist coverage."

[6]  Lewis's Allstate policy provides: "We will not pay any damages an insured person is legally entitled to recover because of . . . bodily injury or property damage sustained while . . . in . . . a vehicle owned by you or a resident relative which is not insured for this coverage."  Dorval's Concord policy provides: "We do not provide Uninsured Motorists Coverage for bodily injury sustained . . . by a family member . . . [w]ho owns an auto, while occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy." (Quotation marks omitted.)

coverage from all three insurance companies.[7] All three denied coverage, and the Estate filed suit against each company for breach of the terms of their respective policies.

[¶7]  Concord, Hartford, and Allstate each moved for summary judgment. The court denied all three defendants' motions, reasoning that there was "a demonstrated need for fact-finding on the ownership issue," and that "[t]he essential question [was] whether Mr. Dodge agreed to allow Michael Lewis to *use Dodge's truck* with Dodge's registration and insurance or whether Mr. Dodge agreed to allow Michael Lewis to *use Dodge's registration and insurance* on *Lewis' truck*." The court noted that the only evidence on this issue was Parsons' deposition testimony, which was "less than clear," and that there was "sufficient evidence for a fact-finder to conclude that Michael Lewis had two weeks (or some other time) before he would own the truck."

[¶8]  Hartford filed a second motion for summary judgment, along with an affidavit from Dodge. According to the affidavit, the sale was final once Michael took possession of the truck, and Dodge specifically informed him that his insurance was not transferable and would not cover Michael. The Estate deposed

---

[7]  Pursuant to 24-A M.R.S. § 2902 (2011), insurers must provide coverage for wrongful death claims upon which an insured is entitled to recover. *See Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 14, 822 A.2d 1159; *Jack v. Tracy*, 1999 ME 13, ¶¶ 10-12, 722 A.2d 869. Title 24-A M.R.S. § 2902 has been amended since this case was initiated in 2011, but the amendments are not relevant to this appeal. P.L. 2013, ch. 284, § 1 (effective Oct. 9, 2013) (codified at 24-A M.R.S. § 2902 (2013)).

Dodge about the circumstances surrounding the transfer of the truck and the agreement between the parties.

[¶9]   Allstate and Concord each adopted Hartford's motion for summary judgment by reference.  The court granted the motion as to all three defendants, concluding that "ownership passed to [Michael] Lewis as a matter of law on August 8, 2009."  The Estate filed this appeal.

## II.  DISCUSSION

### A.    Summary Judgment

[¶10]  "The existence of a dispute of material facts and entry of summary judgment are questions of law which we review de novo, considering the evidence in the light most favorable to the party against whom judgment has been entered[.]"  *Botka v. S.C. Noyes & Co, Inc*., 2003 ME 128, ¶ 18, 834 A.2d 947. A fact is material "if it has the potential to affect the outcome of the suit." *Deutsche Bank Nat'l Trust Co. v. Raggiani*, 2009 ME 120, ¶ 5, 985 A.2d 1 (quotation marks omitted).  "A genuine issue of material fact exists when the [fact-finder] must choose between competing versions of the truth."  *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quotation marks omitted). Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success.  *Cookson v. Brewer Sch.*

*Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276. "When facts, though undisputed, are capable of supporting conflicting yet plausible inferences—inferences that are capable of leading a rational fact-finder to different outcomes in a litigated matter depending on which of them the fact-finder draws—then the choice between those inferences is not for the court on summary judgment." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation marks omitted).

[¶11] A binding contract comes into existence only when the parties have mutually assented to be bound by all its material terms and such assent has been manifested either expressly or impliedly. *Smile, Inc. v. Moosehead Sanitary Dist.*, 649 A.2d 1103, 1105 (Me. 1994.) Preliminary negotiations are not sufficient to create a contract. *Id.* The terms of an oral agreement, as well as the intent of the parties in entering into a contract, are questions of fact. *See Fitzgerald v. Hutchins*, 2009 ME 115, ¶¶ 14-15, 983 A.2d 382. "It is the duty of the fact-finder to determine the existence of the parol contract, its extent and limitations, [and] to find not only what language was used, but its purport and meaning." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me. 1996) (quotation marks omitted).

[¶12] The Estate argues that there is a genuine dispute as to the terms of the agreement between Dodge and Michael. Specifically, the Estate argues that it is

8

unclear whether the parties intended for the sale of the truck to be final immediately, or whether they agreed that it would become final only when Michael obtained his own insurance for the vehicle and registered it in his own name.[8] Michael's non-ownership of the truck is key to the Estate's claims against each of the three defendants. If he did own the truck at the time of the accident, then the other-owned-vehicle exclusions in the Concord and Allstate policies would apply, and the Estate would be unable to recover.[9] Similarly, if Dodge effectively transferred ownership to Michael before the accident, Hartford will not provide coverage, because Dodge's coverage was not transferable and would have terminated automatically upon his sale of the vehicle. Thus, the content of the oral agreement between Dodge and Michael is a material fact having the potential to affect the outcome of the suit. *See Deutsche Bank Nat'l Trust Co.,* 2009 ME 120, ¶ 5, 985 A.2d 1.

[¶13] The defendants point to Dodge's affidavit as conclusive evidence of the parties' intent to complete the sale of the truck on August 8, 2009, with no further action required by either party. However, as the court explained in its order

---

[8] Pursuant to 11 M.R.S. § 2-401(2) (2013), title passes to a buyer when the seller completes performance by effectuating delivery of the goods "*[u]nless otherwise explicitly agreed*." (Emphasis added.)

[9] We are unpersuaded by the Estate's argument that we should find the other-owned-vehicle exclusions unenforceable. *See Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 11, 942 A.2d 663; *Cash v. Green Mountain Ins. Co., Inc.*, 644 A.2d 456, 457-58 (Me. 1994); *Bear v. United States Fid. & Guar. Co.*, 519 A.2d 180, 181-82 (Me. 1986); *Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1142 (Me. 1986).

denying the first motion for summary judgment, the record also contains evidence from which a fact-finder could conclude that the sale would only be final when Michael registered and insured the truck for himself. Dodge failed to immediately remove the truck from his insurance policy. He permitted Michael to keep the license plates, and he did not sign the transfer of title. Parsons testified that Dodge agreed to allow Michael to use the truck with Dodge's plates and insurance until he obtained his own.

[¶14] Viewed in conjunction with Parsons' testimony, the evidence that Dodge permitted Michael to take the truck with the registration, insurance, and license plates would permit a fact-finder to draw the inference that Dodge intended to retain legal ownership of the truck long enough to permit Michael to make his own arrangements for insurance and registration. A vehicle's registration expires automatically upon transfer of ownership. 29-A M.R.S. § 406 (2013). The law also requires that a vehicle's registered owner return the certificate of registration to the Secretary of State if the vehicle is transferred. *Id.* § 406(1). That Dodge did not retain the registration certificate may suggest to the fact-finder that he had not finally transferred ownership.[10]

---

[10] We have previously looked to registration and insurance as evidence of legal ownership. *See Bourque v. Dairyland Ins. Co.*, 1999 ME 178, ¶ 10, 741 A.2d 50.

10

[¶15] Even with Dodge's affidavit included in the record, a fact-finder could rationally conclude that, pursuant to the parties' agreement, a final sale had not been completed. Although the affidavit offers significant support for the defendants' version of events, we are required to view the facts in the light most favorable to the Estate as the nonmoving party. *See Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 15, 60 A.3d 759. Even if we find Dodge's affidavit to be credible, summary judgment is inappropriate because the record requires a choice between two conflicting versions of the truth. *See Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. The terms of the oral agreement are central to the issue of whether Michael owned the truck at the time of the accident. The Estate disputes that the parties agreed to a final sale at the time Michael took possession, and it relies on evidence in the record to support its position. Although the evidence in support of the Estate's position is not overwhelming, a fact-finder must make the ultimate decision between the two competing interpretations of the evidence. *See Lougee Conservancy*, 2012 ME 103, ¶ 11, 48 A.3d 774.[11] Thus, we vacate the judgment.

---

[11] This conclusion is consistent with—and does not in any way affect or alter—existing contract law. Pursuant to 11 M.R.S. § 2-401(2), title passes to a buyer when the seller completes performance by effectuating delivery of the goods, "*[u]nless otherwise explicitly agreed*." (Emphasis added.) If the parties did not agree that title would pass at some other time, the sale would have been complete upon the transfer of physical possession. *See* Dissenting Opinion ¶ 21. However, because the terms of an oral agreement are a question of fact, *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 15, 983 A.2d 382, a fact-finder must decide whether Dodge and Michael "otherwise explicitly agreed," 11 M.R.S. § 2-401(2).

B.     The "Infancy Doctrine"

[¶16]  The Estate argues that, assuming Michael *did* intend to purchase the truck from Dodge, the sale was legally incomplete because Michael died before reaching the age of majority and never had the opportunity to ratify the contract. The defendants argue that, because Michael never disaffirmed the contract, he remained the truck's owner at the time of the accident.

[¶17]  Maine has long recognized the traditional "infancy doctrine." *Foss v. Circuit City Stores, Inc.*, 477 F.Supp.2d 230, 235 (D. Me. 2007) (applying Maine law).  No action to enforce a contract may be maintained against a minor, unless the minor or another person lawfully authorized to do so ratified the contract in writing after the minor reached the age of eighteen.  33 M.R.S. § 52 (2013).  This means that a minor can sue, but cannot be sued, on his contract.  *Shaw v. Philbrick*, 129 Me. 259, 260, 151 A. 423 (1930).  A minor has the right to rescind the purchase of property, except for necessaries, on the grounds of infancy.  *Mellott v. Sullivan Ford Sales*, 236 A.2d 68, 74 (Me. 1967).  The parties' rights after an infant has legally avoided a contract have historically been viewed as "precisely the same as if [the contract] had never been made."  *Derocher v. Cont'l Mills*, 58 Me. 217, 221 (1870).

[¶18]  The Estate relies on language from *Foss* suggesting that, without ratification,  a  minor's  contract  never  legally  comes  into  existence.

*See* 477 F.Supp.2d at 237 ("The Court finds that without written ratification, the [a]greement never came into existence."). In *Foss*, a former employee sued Circuit City and sought to avoid enforcement of an arbitration agreement, which he signed when he was a minor and had never ratified in writing. *Id.* at 231-32. Here, however, there is no evidence that Michael attempted to disaffirm the purchase of the truck, or that he planned to do so.

[¶19] A minor's contract is voidable only at the minor's option; until and unless the minor disaffirms, the contract remains in effect. *See Mellott*, 236 A.2d at 77 ("The plaintiff however cannot claim . . . that the contract of purchase of a truck by a minor married person, male or female, is void; at the most plaintiff contends that such contract is voidable, is not binding on the minor and may be disaffirmed."); *Semmens v. Floyd Rice Ford, Inc.*, 136 N.W.2d 704, 707 (Mich. Ct. App. 1965) (stating that "[a]n executed voidable contract of an infant is valid until disaffirmed" (quotation marks omitted) and explaining that a minor has "a legal right to hold title to and own [an] automobile"). Thus, Michael's age did not affect his legal ability to own the truck.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

ALEXANDER, J., with whom MEAD, J., joins, dissenting.

[¶20] The Court's opinion competently discusses the principles of law incident to resolution of a matter on summary judgment. However, in suggesting that the claims by the Estate create a dispute as to material fact that what happened here only constituted "preliminary negotiations" and not a final sale and transfer of ownership, the Court minimizes undisputed facts that establish, as a matter of law, that the transaction at issue here was a final sale and transfer of ownership. By minimizing the undisputed facts, the Court alters our law of sales, abandons certainty and finality essential to economic decision-making, and invites after-the-fact speculations that would open finality of sales to litigation. From this alteration of basic sales law, I respectfully dissent.

[¶21] In this case, there is no dispute that, regarding the 1990 Ford truck displayed for sale, there was (1) an offer to buy for a set price, (2) acceptance of that offer, (3) payment of the consideration,[12] (4) presentation of a written bill of sale memorializing the sale, (5) transfer of possession from seller to buyer, and (6) buyer's removal of the vehicle from the premises. At that point, under our law as it had existed until today, title to and ownership of the truck passed to the buyer.

---

[12] A sale is complete upon transfer of possession, even upon partial payment of consideration. *See* 11 M.R.S. § 2-401(2) (2013); *see also Ford v. Howgate*, 106 Me. 517, 523, 76 A. 939 (1910) (sale complete upon buyer's use of article even if no payment made).

14

And that transfer of title and ownership cannot be changed by later speculation about the significance, if any, of the seller leaving his registration plates and insurance card with the truck.

[¶22]  As we held decades ago:

> Under the law applicable to the sale of goods, title passes from the seller to the buyer "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."
>
> . . . .
>
> Upon completion of delivery, the seller no longer had any ownership or right to possession unless there was a "rejection or other refusal by the buyer to receive or retain the goods."

*Bell v. Red Ball Potato Co., Inc*., 430 A.2d 835, 837 (Me. 1981).

[¶23]  While the goods at issue in *Bell* were potatoes, the same observations apply to the sale of a truck whether from a dealer or a private sale, when, as here, the sale and delivery to the buyer is documented and completed without reservation.

[¶24]  Today, Maine sales law is largely governed by the Uniform Commercial Code (UCC), found in Title 11 of the Maine Revised Statutes. Pursuant to the UCC, a "'sale' consists in the passing of title from the seller to the buyer for a price."  11 M.R.S. § 2-106(1) (2013).  The UCC further specifies that:

> Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation

of a security interest and even though a document of title is to be delivered at a different time or place.

11 M.R.S. § 2-401(2) (2013).

[¶25] Here there is no evidence that the buyer and seller "explicitly agreed" that title would pass at any time other than the physical delivery of the truck, and the passage of title and ownership at that time was memorialized by the bill of sale that included no reservations. The seller's leaving his registration plates and insurance card with the truck, even if he intended that the buyer have them until the buyer registered and insured the vehicle, was not a reservation that, under Maine law, in any way limited the finality of the sale and transfer of ownership of the vehicle.

[¶26] The fact that the UCC may not apply to the private sale at issue here, although it would apply to an identical sale by an auto dealer, makes no difference for the governing principles of law. For the law regarding sales, we have held that while the UCC may be a bit more liberal in determining that some transactions do constitute sales, the UCC "did not displace the basic common law requirement of contract law that the parties must have intended to conclude a binding agreement and that a promise must be supported by consideration." *Zamore v. Whitten*, 395 A.2d 435, 443 (Me. 1978), *overruled on other grounds by Bahre v. Pearl*, 595 A.2d 1027, 1035 (Me. 1991).

16

[¶27] Applying the common law requirements of sales law a century ago to the sale of a one-half interest in a 1907 Ford, we determined in *Ford v. Howgate* that an oral agreement to purchase the plaintiff's interest in a corporation and his interest in the 1907 Ford for the gross sum of $1,000 was enforceable—there against a statute of frauds claim—although "[n]o writing was made, no money paid, and no certificate of the seven shares of stock was tendered or demanded." 106 Me. 517, 519, 76 A. 939 (1910). We held that the sale was complete and enforceable because, after the agreement was made, "the defendant went into the company's shop and there assisted in the business of the corporation for about ten days, and while there used the automobile." *Id*. We held that these actions signified acceptance and receipt of the articles purchased to make the oral agreement enforceable. *Id*. at 523.

[¶28] This case involves many more attributes of a contract of sale, enforceable at common law, than existed in *Ford*. Beyond acceptance and receipt of the truck, a writing, the bill of sale, was made; money was paid; and the buyer took immediate possession of the truck and thereafter used it as his own. If the Maine law governing sales applies as it has in the past, the buyer became the owner of the truck and the seller had no further interest in the truck upon the buyer's taking possession at the seller's premises. Creative efforts to undermine the finality of the sale by suggesting speculative facts, such as whether the seller

left his registration plates and certificate of insurance with the vehicle, to somehow qualify the finality of the sale can make no difference to the ownership issue if the integrity of our law of sales is to be respected and maintained. I would affirm the trial court's judgment.

_____

**On the briefs:**

Charles E. Gilbert, III, Esq., and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellant Estate of Michael Lewis

David P. Very, Esq., and Darya I. Haag, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Property & Casualty Insurance Company of Hartford

J. William Druary, Jr., Esq., and Gregory M. Patient, Esq., Marden, Dubord, Bernier & Stevens, PA, LLC, Waterville, for appellee Allstate Fire & Casualty Insurance Company

Christopher C. Dinan, Esq., and Matthew K. Libby, Esq., Monaghan Leahy, LLP, Portland, for appellee Concord General Mutual Insurance Company

**At oral argument:**

Charles E. Gilbert, III, Esq. for appellant Estate of Michael Lewis

David P. Very, Esq., for appellee Property & Casualty Insurance Company of Hartford

Gregory M. Patient, Esq., for appellee Allstate Fire & Casualty Insurance Company

Hancock County Superior Court docket number CV-2011-51
FOR CLERK REFERENCE ONLY