JABAR, J.,
dissenting.
I. INTRODUCTION
[¶ 20] I respectfully dissent because the Court has improperly used summary judgment to resolve factual disputes regarding motivation, knowledge, ' or intent. The *250 plaintiffs, Dennis and Brace Plante, are entitled to have a jury decide, whether Long fabricated facts surrounding events that occurred between the Plantes and Long.
II. DISCUSSION
[¶ 21] The Court correctly sets out the actual malice element of the Plantes’ defamation claim against Long, that the Plantes must prove “that the defamatory material was published with actual malice.” Ballard v. Wagner, 2005 ME 86, ¶ 10, 877 A.2d 1083. Proof of actual malice requires establishing “that the statements were made with knowledge of their falsity or with reckless disregard for their truth or falsity.” Id, ¶ 15.
• [¶ 22] Although “[fjalsity and actual malice are distinct concepts,” and therefore each must be proven to establish a claim for defamation of a public official, “[i]t may be possible, as the United States Supreme Court has suggested, that proof of falsity will support an inference of actual malice when the alleged libel purports to be an eyewitness or other direct account of events that speak for themselves.” Mahoney v. Adirondack Publ’g Co., 71 N.Y.2d 31, 523 N.Y.S.2d 480, 517 N.E.2d 1365, 1369 (1987) (citation omitted) (quotation marks omitted). This “inference- depends for its validity on the premise that the eyewitness could not have perceived and understood anything but the truth.” Id. The crux of the inference therefore lies in the alleged defamatory statements describing a version of the facts that the plaintiff disputes, as opposed to the alleged defamer’s perception or interpretation of ambiguous events. See id.
[¶ 23] In Ventura v. Kyle, a case discussed by the Court, Court’s Opinion ¶ 16, and relied upon by the Plantes to support their assertion that the falsity of Long’s statements may be sufficient to prove actual malice, the United States District Court for the District of Minnesota considered a defamation case concerning an autobiography written by Chris Kyle containing a passage in which he claimed to have punched former wrestler, actor, and Minnesota Governor Jesse Ventura in the midst of a scuffle at a bar. 8 F.Supp.3d 1115, 1116-17 (D. Minn. 2014). The court concluded that Ventura, through affidavits of witnesses to the .encounter, “presented sufficient evidence to create a genuine issue of fact as to whether Kyle knowingly .,. published false statements.” Id. at 1122. Although the court stated that “it is possible Kyle could have misinterpreted Ventura’s comments to him and innocently published a false account of them,” because a jury could find, based. on the evidence, that Kyle falsely wrote in his book that he had punched Ventura, the jury “could reasonably conclude he fabricated the rest of his story.” Id. at 1121-22 (emphasis omitted). The court therefore determined that a jury could infer from one false statement concerning an unambiguous event that Kyle’s entire recitation of the encounter was false. Id.
[¶24] Ventura is unlike Michaud v. Town of Livermore Falls, in which we held that where a “meeting led to high emotions and resulted.in widely varying perceptions and interpretations of the participants’ conduct, depending upon each viewer’s degree and position of involvement,” there was no proof of knowledge or reckless disregard for the falsity of a letter criticizing a plaintiff who had been a participant at the meeting. 381 A.2d 1110, 1115 (Me. 1978). In Michaud, we concluded that, “although [the letter was] possibly biased and exaggerated,” there was no evidence that it “was not an honest communication relating the author’s own- interpretation of the plaintiffs conduct,” Id. Here like the facts in Ventura and unlike the *251 facts in Michaud, the jury could infer that Long was not honest about the participants’. conduct.
[¶ 25] We have- applied a similar reasoning when determining whether an allegedly defamatory statement consisted of opinion alone, and was therefore- not actionable, or consisted of facts and was therefore actionable. Lester v. Powers, 596 A.2d 65, 71-72 (Me. 1991); see Lightfoot v. Matthews, 587 A.2d 462, 468 (Me. 1991) (stating that a statement of fact is “an essential element in an action for defamation”). In differentiating between fact and opinion, we ask whether “it is clear from the surrounding circumstances that the maker of the statement did not intend to state an objective fact but intended rather to make a personal observation on the facts.” Caron v. Bangor Publ’g Co., 470 A.2d 782, 784 (Me. 1984).
[¶ 26] We have held in many cases that issues of intent or animus can rarely be decided as a matter of law. See, e.g., Beal v. Bangor Publ’g Co., 1998 ME 176, ¶ 8, 714 A.2d 805. In Trott v. H.D. Goodall Hosp., a case involving employment discrimination, we acknowledged that “direct evidence of discriminatory animus will rarely be available.” 2013 ME 33, ¶ 19, 66 A.3d 7 (quotation marks omitted); see also Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009) (stating that “direct evidence of actual malice is rare”). Furthermore, “[a] factual 'determination of a motivation issue is heavily dependent on inferences, circumstantial evidence, and credibility determinations that do not easily allow resolution by summary judgment.” Stanley v. Hancock Cty. Comm’rs, 2004 ME 157, ¶ 36, 864 A.2d 169 (Alexander, J., dissenting).
[¶ 27] Therefore, we must here consider whether there is any dispute of fact presented in the parties’ statements of material facts from which a jury could infer that Long knew his versions of the event he described in his emails were false. The jury should decide whether Long intended to state .definitive facts in his emails, or instead intended to state his perception or opinion of the , events giving rise to the emails. Although the Plantes contend that Long made many defamatory statements, this case revolves around two events — an incident between Long and Bruce, and an incident between Long and Dennis. First, Long’s October 28, 2011, emails referenced an encounter on October 27, 2011, in which Long alleged that Bruce saw Long out jogging while Bruce was driving a propane delivery truck, got out of the truck, and screamed profanity-laced threats at Long. Second, Long’s April 24, 2012, emails referenced an encounter where Long asserted that Dennis followed him. If the events referenced by these emails are ambiguous or susceptible to misperception, there can be no inference that Long acted with actual malice because his emails, though possibly false, show only a misinterpretation of eyents. See Ventura, 8 F.Supp.3d at 1121; see also McMurry v. Howard Publ’ns, Inc., 612 P.2d 14, 18 (Wyo. 1980) (“A subjective awareness of probable falsity cannot be demonstrated under the standard of ‘convincing clarity by evidence, showing that the publisher and the plaintiff disagreed with respect to their perceptions of events which they both observed.” (emphasis added)). If, however, the events as recounted in Long’s emails are unambiguous and nonetheless significantly differ from the Plantes’ asserted version of events, then the Plantes are entitled on summary judgment to the benefit of the inference that Long, as an eyewitness to unambiguous events, made false statements in his emails with knowledge of the. falsity of his statements. Ventura, 8 F.Supp.3d at 1121-22; see Mahoney, 523 N.Y.S.2d 480, 517 N.E.2d at 1369.
*252 A. Counts 2 and 3: Long’s Encounter with Bruce
[¶ 28] Counts 2 and 3 claimed as defamatory Long’s emails of October 28, 2011 — to the chief of police, a police captain, and Bruce’s employer at Gagnon Propane— which recounted Long’s version of the October 27 incident. Long’s emails both contained the subject line “Harassment complaint” and indicated that he wanted to file a harassment complaint — and possibly seek a restraining order — against Bruce. Long asserted in the emails that as he and his wife were jogging, Bruce passed them driving a truck, to which Long waved. The emails then state that Bruce stopped his vehicle, hung out the side, and screamed, “Hey do you want some of this? Are you fucking looking for me?” After Long ignored him, Bruce got much louder and screamed, “Hey I said do you want some of this? Are you looking for me?” to which Long replied, “No, just waving.” According to the emails, Bruce then responded, “Don’t bother,” got back into the truck, and left. Additionally, the emails state that Bruce “is clearly mentally unstable” and that Long “fear[s] what he is capable of doing.” Long admitted to the content of the emails in his response to the Plantes’ statement of material facts.
[¶ 29] The Plantes’ statement of material facts, however, describes an event with significant differences from that indicated by Long’s emails. According to the Plantes, Long smirked at Bruce as Bruce was driving by, Bruce stopped the truck to ask if Long was looking for him, and Long replied “no, I was just waving,” after which Bruce told him “don’t bother” and drove away. The Plantes denied that Bruce used profanities during the encounter and denied that he “screamed” at Long.
[¶30] There is no question that Long and the Plantes gave very - different versions of what occurred on October 27, 2011. If Long is believed, Bruce intimidated and harassed him with provoking language, screaming, “Are you fucking looking for me?” and “Hey do you want some of this?” Long treated this as threatening language, stating in his email that he feared what Bruce was “capable of doing.” If Bruce is believed, the exchange was less provocative: Bruce inquired in a raised voice whether Long was looking for him, but he did not scream profanities or yell “do you want some of this?” Long’s use of quotation marks in his email makes it clear that there- was no misunderstanding of what he heard, and that he was directly attributing to Bruce the threatening language and behavior. Long’s use of quotation marks is evidence that Long was not simply stating his perception of what happened, rather, it was a precise description of the event. His version of the encounter is not an ambiguous interpretation; it is an unambiguous transcript of Bruce’s words — one that the Plantes dispute. See Mahoney, 523 N.Y.S.2d 480, 517 N.E.2d at 1369.
[¶ 31] Because “words and punctuation express meaning,” and “quotations may be a devastating instrument for conveying false meaning,” Masson v. New Yorker Magazine, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991), the difference in words attributable to Bruce during this October 27 encounter is dispositive here. If Bruce is believéd, then the jury could infer that Long fabricated the words and conduct he attributed to Bruce in the October 28 emails, and also infer that he did so with knowledge of the falsity of his statements. See Michaud, 381 A.2d at 1115. A jury would need to decide between two competing versions of the truth— Long’s and the Plantes’ — and determine whether the encounter was benign or antagonizing. There is a genuine dispute of material fact as to what Bruce in fact said *253 to Long and whether Long fabricated his version of events. See Estate of Lewis v. Concord Gen. Mut. Ins. Co., 2014 ME 34, ¶ 10, 87 A.3d 732 (“A genuine issue of material fact exists when the [jury] must choose between competing versions of the truth.” (quotation marks omitted)). If the jury believes Bruce, then just as the court stated in Ventura, 8 F.Supp.3d at 1121-22, it could infer that Long fabricated the statements in his emails attributed to Bruce, and also infer that Long had knowledge of the falsity of his emails. It is not for us to decide, as the Court does, the import of the parties’ relationship and whether the interaction was “hostile,” Court’s Opinion ¶ 19 n.8, we need consider only whether the dispute over the facts is material. Here, the parties genuinely dispute what occurred between them on October 27, and whether Long gave an honest version of events in his emails. A jury should determine who is telling the truth.
B. Counts 5 and 6: Long’s Encounter with Dennis
[¶ 32] Count 5 alleges that Long’s statements in his April 24, 2012, email to the Berwick Board of Selectmen — stating that both Bruce and Dennis were following and harassing Berwick residents — is defamatory. Count 6 similarly alleges as defamatory Long’s May 23, 2012, email to the chief of police stating that Bruce and Dennis “lied, followed, intimidated, and harassed people” in Berwick. The Plantes contend that summary judgment for Counts 5 and 6 was inappropriate as to Dennis because “the only information Long had of Dennis following someone was a single occurrence where [Long] claims to have been followed by Dennis.”
[¶ 33] Long admitted to the Plantes’ statement of material fact that he has never been followed by Bruce, and in his deposition, Long recounted only one occasion on which he was ever followed by Dennis. He stated that he was driving in Berwick toward Rochester when he noticed Dennis following in a white SUV “no more than four or five feet” behind him, and that he pulled over to the side of the road to let Dennis pass.
[¶ 34] Dennis provided a very different version of the incident. Dennis acknowledged that he was in a vehicle behind Long, but he stated that there were two cars between them and that when he and Long turned right at an intersection, the other two cars turned left, so that Dennis’s vehicle pulled up behind Long’s. According to Dennis, Long pulled to the side of the road, at which point Dennis passed him, and then Long then followed him, making several identical turns, and following Dennis onto a dead end road into an industrial park, including a U-turn out of the industrial park. Dennis stated that Long stopped only when Dennis pulled to the side of the road to let him pass.
[¶35] As with the October 28 emails related to the October 27 jogging incident, Long and the Plantes present two very different versions of the facts. Taking the facts and all reasonable inferences in the light most favorable to the Plantes, see Budge v. Town of Millinocket, 2012 ME 122, ¶ 12, 55 A.3d 484, a jury could infer that Long knew of the falsity of his statement in the April 24, 2012, and May 23, 2012, emails that Dennis “followed” him.
[¶ 36] It is up to the jury to determine the credibility of the parties and decide who has told the truth. See State v. Hodsdon, 2016 ME 46, ¶ 8, 135 A.3d 816. The question of whether there were other cars in between Dennis’s and Long’s vehicles and whether Long then followed Dennis are questions of unambiguous fact, rather than, as Long argues, subjective belief regarding Dennis’s intentions. See Caron, 470 A.2d at 784. It is one thing to misper- *254 ceive being followed by another vehicle, even if several car lengths behind, but there is no ambiguity to Dennis’s assertion that Long then pulled over and followed Dennis, making several identical turns, and Long did not deny doing so. If the jury were to believe Dennis’s version ,of events, rather than Long’s, it could infer that Long fabricated his story, which would allow it to infer that Long .acted with actual malice. See Mahoney, 523 N.Y.S.2d 480, 517 N.E.2d at 1369. The dispute over which version of events is true is a genuine dispute of material fact, see Estate of Lewis, 2014 ME 34, ¶ 10, 87 A.3d 732, and the court erroneously granted Long’s .motion for summary judgment as to Counts 5 and 6, insofar as those counts relate to: Dennis.
III. CONCLUSION
[¶ 37]-The dissent in Stanley v. Hancock County Commissioners stated that: .
recently, liberal use of summary judgment practice to resolve factual disputes regarding motivation or intent — almost always in favor of a defendant — has been sharply criticized as violative of both the basic purpose of the summary judgment rule and the essential right to a trial by jury guaranteed by our state and federal, constitutions and our civil rules. Arthur R. Miller, one .of the preeminent civil practice, scholars of our time, observes that: “Overly enthusiastic use of summary judgment means that trialworthy cases will be terminated .pretrial on motion papers, possibly compromising the litigants’ constitutional rights to a day in- court and jury trial.”
2004 ME 157, ¶ 38, 864 A.2d 169 (Alexander, J., dissenting) (footnotes omitted) (citing Arthur R. Miller, The Pretrial Rush to Judgment: Are the “Litigation Explosion,” “Liability Crisis,” and Efficiency Cliches Eroding Our Day In Court and Jury Trial Commitments? 78 N.Y.U. L. Rev. 982, 1071 (2003)). Miller has also observed that
when viewing the material on a pretrial motion without the safeguards and environment of a trial setting, courts may be tempted to treat the evidence in a piecemeal rather than cumulative fashion, draw inferences against the nonmoving ■party, or discount the nonmoving party’s evidence by weighing it against contradictory evidence. Judges are human, and their personal sense of whether a plaintiffs claim seems “implausible” can subconsciously infiltrate even the most careful analysis. Encouraged by systemic concerns suggesting that summary judgment is desirably efficient, judges may be motivated to seek out weaknesses in the nonmovant’s evidence, effectively reversing the historic approach.
Miller at 1071.
[¶38] Here, the Court has compared Long’s versions with the Plantes’ versions and determined that the two are similar enough that the Plantes cannot prove that Long fabricated his version of the evénts. I disagree. Long’s assertions in his emails that he felt intimidated by the Plantes’ behaviors do not automatically transform his statements about the events to which he and the Plantes were eyewitnesses into misperceptions or statements of opinion. Long’s emails recount facts regarding the incidents, and several of those facts are material and disputed by the Plantes. Because the Plantes are the nonmoving party, they are entitled to all favorable inferences and, in this case, to have their claims heard by a jury.
[¶ 39] For these reasons I would vacate the court’s summary judgment and remand for trial.