STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss.                             CIVIL ACTION
                                            DOCKET NO. AP-22-12


TRELAWNEY 657, LLC                  )
                                    )
        Plaintiff/Appellee          )
                                    )
                                    )
                                    )
        v.                          )
                                    )
                                    )              ORDER
                                    )
ETHAN STRIMLING                     )
                                    )
        Defendant/Appellant         )
                                    )
                                    )
                                    )
                                    )
                                    )


Before the Court is Defendant/Appellant Ethan Strimling's ("Strimling") Notice of Appeal and Jury Trial Demand after the District Court's (*Oram J.*) entry of a Forcible Entry and Detainer ("FED") judgment against him. Also before the Court is Plaintiff/Appellee Trelawney 657, LLC's ("Trelawney") Motion to Strike.

On June 1st, 2022, a recorded status conference was held in the Cumberland County Superior Court on these pending matters. For the reasons set forth herein, Strimling's jury trial demand is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

The following recitation of the facts is supported by the record and largely mirrors the District Court's recitation in its April 20th order granting judgment in favor of Trelawney.

Strimling a resident of 655 Congress St., Apartment 618, Portland, Maine. The building Strimling resides in is owned by Trelawney 657 LLC, a limited liability company with one

1

REC'D CUMB CLERKS OFC
JUL 5 '22 PM 1:49

shareholder, Geoffrey Rice ("Rice"). Rice owns and operates many other rental properties, either personally or through other entities. One of these entities, Apartment Mart, acts as the property management company for each.

Strimling first entered his lease at 655 Congress Street on or about April 20th, 2016. Strimling's lease was renewed on a yearly basis until May of 2021 when Strimling was informed by Rice that his lease would be terminated.

Beginning on or around April 27th, 2020, Strimling became involved in a tenant's organization involving other tenants of the Trelawney building and other properties managed by Apartment Mart. The tenant's union, originally named Renters of Apartment Mart in Solidarity ("RAMS"), sent an initial email communication to Rice on which Strimling signed his name. After that communication, Rice and RAMS began weekly meetings which Rice stepped away from in May of 2020. RAMS was eventually renamed Trelawney Tenant's Union ("TTU").

TTU sent an email to Apartment Mart on May 20th, 2021, at 9:44 am. The email was electronically signed by Strimling and forty six other tenants in buildings managed by Rice owned entities. The May 20th email asked Trelawney to provide information regarding lease renewals and Rice's long-term plans for the Trelawney building.[1] It did not specifically request a meeting and suggested that Rice contact the TTU to discuss its contents.

On or about April 9th, 2021, Rice noticed that a window in Strimling's apartment was open in violation of a lease provision requiring windows to stay closed from September 15th to April 15th each year. Rice notified his business office of the violation and they issued Strimling a $50 fine on May 7th, 2021. Strimling contested this fine and requested a meeting with Rice. After several follow up emails from Strimling to Rice, Rice finally indicated, on May 20th, 2021,

---

[1] At hearing, Rice testified that in 2021, a high rate of staff turnover made delivering lease renewals to tenants a slow and difficult process.

2

that he was willing to meet with Strimling. Rice sent an email to Strimling inviting him to meet at his attorney's office on May 24th at 9:30 am. Strimling could not attend, so the meeting was rescheduled for the following morning.

At 9:30 am on May 25th, a meeting was held at the office of Rice's attorney, Paul Bulger. Present at the meeting was Attorney Bulger, Rice, and Strimling. Towards the end of the meeting, Strimling was given a notice of non-renewal by Rice. The notice required that Strimling vacate his apartment by July 1st, 2021. Despite the notice, in early July of 2021, Strimling paid — and Trelawney accepted — a rent payment, creating a tenancy at will under Maine law.

On June 22nd, 2021, TTU filed a complaint with the City of Portland's ("City") housing safety office and rent board. The complaint was sent via email and alleged that Rice (1) improperly imposed rent increases; (2) failed to comply with the new rent control ordinance's registration requirements; (3) improperly planned to evict tenants; and (4) had failed to provide a renters' rights notice in accordance with local ordinance. The email was signed by TTU and resulted in a notice of violation being issued to Rice.

On August 31st, 2021, Trelawney served Strimling with a ninety day notice to quit the premises and on December 13th, 2021, Trelawney served Strimling with an FED complaint. On April 12th, 2022, a hearing was held on Trelawney's FED complaint in the District Court and on April 20th, a judgment was issued in favor of Trelawney. On April 26th, 2022, Strimling timely filed a notice of appeal and a demand for a jury trial consistent with Maine Rules of Civil Procedure ("M.R. Civ. P.") 80D(f) and 76D. The parties agreed that Strimling's timely appeal automatically stayed the issuance of a writ of possession subject to the condition that Strimling continue to pay $980 in monthly rent until the appeal is resolved.

Along with his notice of appeal and his jury trial demand, Strimling filed an affidavit pursuant to M.R. Civ. P. 80D(f)(2)(A), asserting that there are three genuine issues of material fact which entitle him to a jury trial *de novo*.

Trelawney filed an opposition to Strimling's jury trial demand, a Motion to Strike, and a Motion pursuant to M.R. Civ. P. 80D(f)(3). The 80D(f)(3) motion asks the Court to order the production of a transcript of the April 20th proceeding, and the incorporation of that transcript into the record prior to deciding whether a jury trial, *de novo*, is appropriate. The Court scheduled a conference on the pending filings for June 1st, at which both Trelawney and Strimling appeared, through counsel.

## DISCUSSION

The parties have placed two issues before the Court: (I) Whether a party seeking a jury trial on appeal in an FED proceeding is limited, in their argument, to the factual record developed at hearing in the District Court; and (II) Whether the record presents genuine issues of material fact sufficient to warrant a jury trial *de novo*.[2]

### I.    Scope of Jury Trial Argument

At the June 1st status conference, Trelawney asked the Court to reserve ruling on whether Strimling has established genuine issues of fact until fourteen days after a transcript of the April 12th FED trial is produced. This would allow Trelawney to supplement their Motion to Strike and identify portions of Strimling's affidavit which touch on issues they believe were not addressed at the April 12th hearing.

---

[2] Strimling also raises an issue of law concerning the Court's reliance on the wrong notice to quit in making its determination that the Plaintiff rebutted 14 M.R.S. § 6001(3)(B)'s presumption of retaliation. Because the Court determines that a jury trial is appropriate, it does not address this issue now. It will address the issue of law concurrent or subsequent to the trial.

4

At the heart of the parties' arguments is whether, in filing an affidavit and demand for a jury trial, the appellant is constrained in their argument to the facts presented in the FED hearing itself.[3] The Court agrees with Trelawney that he is.

M.R. Civ. P. 80D(f)(4) states: "If the court finds that the appellant has shown in *light of the affidavits and the whole record*, including any transcript or portions thereof ordered to be incorporated as provided in paragraph (3) of this subdivision, that there is a genuine issue of material fact as to which there is a right to trial by jury . . ." (emphasis added). This language is clear that the affidavits filed, must be considered together with the whole record (including the record of the FED hearing itself) in determining whether there are genuine issues of material fact. The purpose of M.R. Civ. P. 80D(f)(2)(A) affidavits is to focus the Court on the factual issues and their materiality. Their purpose is not — as Strimling contends — to present new factual arguments which help generate genuine issues. Accordingly, Strimling is limited in his argument on appeal to the record developed before the District Court.

Despite this, the Court exercises its discretion to deny Trelawney's Rule 80D(f)(3) motion to incorporate the transcript of the FED hearing prior to its review of the parties' affidavits. *See* M.R. Civ. P. 80D(f)(3) ("The court *may* upon . . . the motion of either party, order that the transcript or relevant portions thereof be incorporated in the record on appeal prior to the court's review of the affidavits and record . . . .") (emphasis added). Prior — and concurrent to — its review of the parties' affidavits an audio recording of the April 12th hearing was obtained.[4]

---

[3] Trelawney concedes that, in the event a jury trial is granted, Strimling can present new witnesses and exhibits regarding the genuine issues of fact raised.

[4] While this contravenes Trelawney's request to incorporate a written transcript into the record prior to review of the parties' affidavits, such an action — review of the audio record instead of a transcript — is not without precedent. *See Nfg. Hous. P'ship Lp v. Pierre*, No. AP-22-09, 2022 Me. Super. LEXIS 1 at n.1, (Apr. 26, 2022) ("Ms. Saint Pierre had ordered a transcript when she filed her notice of appeal and in response the District Court ordered that an

Although the Court denies Trelawney's Motion, it acknowledges that Strimling has ordered production of a transcript along with the filing of his appeal. Consistent with M.R. Civ. P. 76H(e)(3)(B)(i), Strimling — as the ordering party — will cover the cost of transcript production. As soon as the parties receive a completed transcript, they will deliver a copy to the court for incorporation into the appellate record by the Clerk in accordance with M.R. Civ. P. 80D(f)(2)(B).

## II. Genuine Issues of Fact

Either party may appeal the District Court's factual findings in an FED proceeding "to the Superior Court by jury trial *de novo* on any issue so triable of right by filing a notice of appeal as provided in Rule 76D." M.R. Civ. P. 80D(f)(2)(A). "A party who seeks a jury trial de novo shall include in the notice of appeal a written demand for jury trial and shall file with the notice an affidavit or affidavits meeting the requirements of Rule 56(e) and setting forth specific facts showing that there is a genuine issue of material fact as to which there is a right to trial by jury." *Id.*

In his Notice of Appeal, Strimling argues there are three genuine issues of material fact which warrant a jury trial.

(1) Whether Mr. Rice scheduled a meeting "in response" to correspondence by Mr. Strimling with the landlord over a disputed window fine as the District Court stated in its order;

(2) What was said during the meeting between Rice, Strimling, and Rice's lawyer, on May 25th, 2022; and

(3) Whether Strimling took a leading role in the Trelawney Tenants Union's communications with the City of Portland Housing Safety Office.

---

audio recording be produced. In considering Ms. Saint Pierre's request for a jury trial *de novo*, therefore, this court has listened to the audio recording of the hearing below, which lasted approximately 2 hours and 30 minutes.")

The audio recording of the April 12th hearing was five hours, forty minutes and thirty two seconds (5:40:32) long.

Each potential factual issue raised by Strimling is addressed in turn.

**A. Is there a genuine issue of material fact as to whether Mr. Rice scheduled a meeting with Strimling "in response" to correspondence from the landlord regarding a window fine?**

Strimling contends that there is a genuine issue of material fact as to whether Rice's correspondence with Strimling on May 20th, 2021 — setting the meeting where Strimling would receive his non-renewal notice — was really intended to address the assessed open window penalty. Strimling maintains that the meeting was really set because of his participation in the TTU. If true, this would be evidence of retaliation under 14 M.R.S. § 6001(4) (2022).

The Court determines that there is an issue of fact regarding the reason for the meeting that took place on May 25th, 2021. At hearing, the relevant testimony provided is summarized as follows: The May 25th meeting took place at Attorney Paul Bulger's office on Congress Street in Portland. In attendance was Bulger, Strimling and Rice. The initial impetus for this meeting was Rice's decision to fine Strimling $50 for leaving a window open during "heating season" in violation of a specific lease provision. The fine was levied on May 7th, 2021.

On May 11th, staff from Apartment Mart staff contacted Strimling about the fine. That same day, Strimling requested a meeting with Rice to discuss and contest the fine. Apartment Mart staff indicated Rice was not available but did say he may be willing to meet. Hearing nothing, on May 17th, Strimling followed up with Apartment Mart and Rice regarding scheduling a meeting. Hearing nothing again, Strimling sent one last follow up on May 20th, at 12:57 pm.

Earlier that same day, at 9:44 am, the TTU sent their first communication to Rice seeking information about the status of lease renewals and the prospective sale of the building. That communication from the TTU was signed by Strimling and forty six other tenants. Later that

7

day, at a time not clearly established at hearing, Rice sent a letter to Strimling which stated, in full:

> Dear Ethan:
>
> I received your *email at 9:44 a.m. this morning.* I would like to have a meeting between you, I and my attorney Paul Bulger at Paul Bulger's office on Monday, May 24th, at 9:30 a.m.
>
> Please acknowledge receipt of this email.
>
> Yours Truly,
>
> Geoffrey I. Rice

(Pl.'s Ex. 18.) (emphasis added).

The time stamp listed in Rice's letter is critical to this Court's determination. The evidence shows that there were two emails sent to Rice on May 20th, 2021. One from the TTU to Rice at 9:44 am, seeking more information about lease renewals and the potential sale of the Trelawney building. Another from Strimling to Rice at 12:57 pm sending one last follow up email requesting a meeting to discuss his window fine.

The letter from Rice seeking to schedule the meeting references the 9:44 am email, only. This fact presents a genuine issue of fact regarding the reason for the meeting at which Rice informed Strimling of termination as a tenant. Although Rice testified that the meeting held on May 25th was called simply to create a non-hostile environment where he could issue Strimling his notice of non-renewal, Rice's letter informing Strimling of the meeting suggests that Rice's decision to issue that notice was reached, at least in part, on the TTU communication. There is competent record evidence to suggest that the TTU email was the "final straw," not the window Strimling left ajar.

8

The evidence presented and the testimony adduced at hearing credibly supports two competing theories. Rice's theory, which the District Court found to be more credible, is that he made the decision not to renew Strimling's lease independent of his participation in RAMS or TTU. He claims he terminated Strimling's tenancy in response to the constant "nickel and diming" by Strimling and the window being left open. Strimling's alternative theory, put simply, is that but for his role in RAMS and TTU, Rice would not have scheduled the meeting, issued the notice of nonrenewal, and evicted him. This critical factual question — the basis for Rice's decision to hold the May 25th meeting which began the FED process — is subject to competing interpretations. The record, when considered together with the parties' affidavits, does present a genuine issue of fact as to this issue.

The crucial question, however, is whether the issue generated is material to the Court's ultimate decision. That is, whether it "has the potential to influence the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. Here, it does. One of Strimling's legal theories asserted in defense of Trelawney's FED complaint is that a writ of possession may not be issued against him "in retaliation for [his] membership in an organization concerned with landlord-tenant relationships." 14 M.R.S. § 6001(4) (2022). If a fact finder determines that the meeting on May 25th, 2021, was scheduled in response to the May 20th TTU email to which Strimling signed his name, they could also find that Rice's decision not to renew the lease and later evict Strimling was improperly motivated. Accordingly, Strimling is entitled to a jury trial *de novo* on this issue.[5]

### B. Is there a genuine issue of material fact as to what was said during the meeting between Rice, Strimling and Attorney Bulger?

---

[5] On an FED appeal and associated jury trial demand, this Court's job is to review the record, and affidavits, for the existence of a genuine issue of material fact. It is not to directly review and comment on the District Court's factual findings or credibility determinations. A jury may well reach the same conclusions as the District Court did.

Strimling next contends that a genuine issue of material fact exists as to what was said during the May 25th meeting at Attorney Bulger's office. The District Court, in footnote four of its order, acknowledged that there was a "significant factual dispute" regarding what was said. *See Order*, Docket No. AP-22-21, n.4 (Apr. 20, 2022). This Court agrees and determines that the factual issue is material.

At hearing on April 12th, the District Court heard from Rice, Strimling and Bulger. Each witness generally agreed that the meeting started out with pleasantries and salutations but from there, their recollections diverge significantly. Strimling testified that Bulger had a copy of the May 20th TTU email in front of him and that the meeting started with addressing concerns about the TTU. He testified that Bulger went through the letter and indicated Rice had no intention to sell the building. Bulger and Rice testified that Bulger did not have the TTU letter, that there was no discussion about the TTU, and that they did not discuss Rice's future plans. Instead, Bulger and Rice said that the three of them discussed Portland's newly enacted rent control ordinance extensively before Rice served Strimling with his notice of non-renewal.

Whether any discussion occurred regarding Strimling's role in the TTU is material to the ultimate legal determination under 14 M.R.S. § 6001(4) (2022). If, in fact, the May 25th, 2021, discussion involved Strimling's role in an organization "concerned with landlord-tenant relationships," then it could serve as proof of Strimling's claim that his lease was not renewed — and he was evicted — as retaliation for his involvement in the TTU. What exactly took place at this meeting —and the ramifications of such a finding — is well within the province of a jury. There is a genuine issue of material fact warranting a jury trial *de novo*, as to Strimling's second factual issue.

10

**C. Is there a genuine issue of material fact as to whether Strimling took a leading role in the Trelawney Tenant's Union's communications with the City of Portland Housing Safety Office?**

Finally, Strimling contends that there is a genuine issue of fact as to whether he took a "leading role" in the TTU's complaint to the City of Portland regarding issues at Trelawney. This factual issue is material, Strimling contends, because if Strimling took a leading role in the TTU's complaint to the City regarding potential ordinance violations, a decision to evict him in response would be a violation of 14 M.R.S. § 6001(3)(B). That statutory section provides:

> **3. Presumption of retaliation.** In any action of forcible entry and detainer there is a rebuttable presumption that the action was commenced in retaliation against the tenant if, within 6 months prior to the commencement of the action, the tenant has:
>
> . . .
>
> **B.** Complained as an individual, or if a complaint has been made in that individual's behalf, in good faith, of conditions affecting that individual's dwelling unit that may constitute a violation of a building, housing, sanitary or other code, ordinance, regulation or statute, presently or hereafter adopted, to a body charged with enforcement of that code, ordinance, regulation or statute, or such a body has filed a notice or complaint of such a violation

14 M.R.S. § 6001(3)(B) (2022).

After a thorough review, the record does reveal a genuine issue of fact as to Strimling's role in the TTU's communications. Strimling testified that he has been involved in the TTU since its inception as RAMS in early 2020. He also testified that he met with Rice in early 2020 to voice concerns of Trelawney tenants, that he recruited other tenants to join the organization, that he played a pivotal role in the decision to change the organization's name from RAMS to TTU, and that he helped draft communications with Rice. In fact, Bulger, Rice's attorney, testified that he understood Strimling to be one of four main voices of TTU. It is conceivable that the complaint filed with the City regarding Rice's compliance with the new rent control ordinance was facilitated by Strimling.

11

On the other hand, the evidence presented at hearing could also support a conclusion that, despite Strimling's early leading role in RAMS, he was not as active in TTU leadership at the time their complaint was filed. Accordingly, a genuine issue of fact does exist as to Strimling's influence and position within the TTU when the complaint was filed with the City. However, this factual issue is not material.

A genuine issue of fact is a material one if it "can affect the outcome of a case." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821. Strimling argues that the factual issue of whether he played a "leading role," in filing the TTU's complaint is "material" because it bears directly on the legal question posed by Section 6001(3)(B) which is whether he was evicted in retaliation for the filing of that complaint. The Court disagrees.

The complaint to the City was made June 22, 2021, nearly a month after the meeting at which Rice served Strimling with a non-renewal notice. As the District Court noted, Rice's decision to end his business relationship with Strimling was made in May of 2021.

When Strimling did not vacate his apartment by July 1st, as the notice of nonrenewal required him to do, Rice intended to initiate an FED action against him. That forcible entry and detainer complaint was dated July 2nd, 2021 and was recalled from the Cumberland County Sherriff's office when Rice realized his office had accepted rent from Strimling for the month of July making him a tenant at will under Maine law. Rice testified that this error was a result of him not timely informing his staff of his plan to evict Strimling. He further testified that any additional delay was the result of a busy 2021 summer which included multiple legal proceedings involving his tenants.

The decision to initiate an FED action against Strimling was made long before Strimling's holdover. Rice decided not to renew Strimling's lease in May of 2021 and had every intention to evict him if he did not comply with the nonrenewal notice's instructions to vacate his apartment by July 1st. The second FED action filed by Rice simply effectuated Rice's intent to get Strimling off the premises. The

12

operative decision not to renew, and subsequently evict Strimling was made in May. Whether Strimling played a leading role in TTU's complaint filed with the City does not alter this analysis because Rice had already planned — prior to June 22nd — to file an FED complaint against Strimling in the event he held over.

Accordingly, there is no genuine issue of material fact which entitles Strimling to a jury trial on this third factual challenge.

## III. Conclusion

Based on its review of Strimling's affidavit, Rice's affidavit, the audio recording of the FED hearing, and the District Court's order, the Court finds that there are two issues of material fact which warrant a jury trial *de novo*.

Accordingly, the Court orders as follows:

- Since the Court has found issues of fact sufficient to warrant a jury trial, the Court orders that *Trelawney v. Strimling*, Docket No. AP-22-21, be placed on a jury trial list maintained by the clerk in accordance with M.R. Civ. P. 40(a).

- The trial will address the two issues of material fact found by this Court:

    1. Whether Mr. Rice scheduled a meeting with Strimling "in response" to correspondence from the landlord regarding a window fine or whether the meeting, subsequent nonrenewal notice, and FED complaint were a result of Strimling's participation the Trelawney Tenant's Union.

    2. The contents of the May 25th meeting between Attorney Bulger, Geoffrey Rice, and Ethan Strimling.[6]

---

[6] The resolution of these factual issues by a jury will bear directly on application of 14 M.R.S. § 6001(4), which, if applied, would save Strimling from issuance of a writ of possession. If, at trial, pursuant to M.R. Civ. P. 49(a), the parties opt for a special verdict, the verdict form could read as follows.

- The issue of law raised by Strimling will be addressed by the Court concurrent with, or after, the jury's verdict.

- The Court will schedule a status conference with the parties as soon as is practicable. After the conference, at a date to be determined by the Court, the parties will submit pre-trial memoranda which will include witness and exhibit lists.

**Entry Is:**

Plaintiff/Appellant Strimling's Demand for a jury trial *de novo* is Granted in

Part and Denied in Part. A jury trial is to be scheduled on the factual issues.

The Clerk is directed to incorporate this order into the docket by reference pursuant to

M.R. Civ. P. 79(a).

Date: 7/5/22

_____
John O'Neil Jr
Justice, Maine Superior Court

---

1. Do you find that Rice's decisions to: schedule a meeting with Strimling on May 25th, not renew Strimling's lease, and evict Strimling were retaliatory responses to Strimling's participation in Renters of Apartment Mart in Solidarity and the Trelawney Tenant's Union? _____YES _____NO

2. Do you find that Rice's decisions to: schedule a meeting with Strimling on May 25th, not renew Strimling's lease, and evict Strimling were made without regard to — that is, for reasons other than and unrelated to — Strimling's participation in Renters of Apartment Mart in Solidarity and the Trelawney Tenant's Union? _____YES _____NO

3. Do you find that Strimling's participation in the Trelawney Tenant's Union was a major topic of conversation at the May 25th, 2021, meeting between Rice, Strimling and Attorney Bulger? _____YES _____NO

4. If answering yes to question three, do you find that Rice's decision not to renew Strimling's lease and subsequently begin an eviction action against him was a retaliatory decision based on the contents of this conversation? _____YES _____NO

14