STATE OF MAINE                                      SUPERIOR COURT
ANDROSCOGGIN, ss.                                     CIVIL ACTION
                                                DOCKET NO: CV-18-55

                              )
**JAMES SMITH, JR.,**         )
                              )
            Plaintiff,        )           **ORDER**
                              )
                              )                 \text{JUN 24 '20 am11:04}
v.                            )                 ANDRO SUPERIOR COURT
                              )
                              )
                              )
**ANDROSCOGGIN COUNTY JAIL,** )
**et al.,**                   )
                              )
            Defendant,        )

## I.   Introduction

Plaintiff, James Smith, a transgender female, is currently incarcerated at the Androscoggin

County Jail ("ACJ"). Smith claims she was physically and sexually abused at ACJ. Smith further

alleges that she has been wrongfully housed with men, even though she identifies as a female and

has been harassed and discriminated against for being transgender. There are multiple outstanding

motions that will each be addressed in turn. However, for the following reasons, the Defendants'

revised motion for summary judgment is hereby GRANTED.

## II.   Facts and Procedural History

Plaintiff, James C. Smith, Jr. ("Smith" or "Plaintiff") aka Jamie Smith, filed her initial

complaint on May 7, 2018. Her initial complaint was against "multiple unnamed employees of

Androscoggin County Jail and Sherriff's Department at this juncture the Defendants will remained

unnamed, to be disclosed at a later time, due to threats and assaults made against [Smith]." (Pl.'s

Compl. 1.) Smith claims to have received death threats, threats of sexual and physical assault,

along with threats to her family, loved ones, and witnesses. *Id.* Specifically, Smith claims that,

1

starting on 5/14/17, she has been physically and sexually assaulted by workers at ACJ. She also claims that the same workers threatened her life if she reported these incidents. Ultimately, the Plaintiff is asking the Court to transfer her to a different correctional facility.

Defendants, through attorney John Wall, filed their answer and affirmative defenses on August 17, 2018. Defendants deny all allegations of abuse and threats raised in the complaint. The Defendants also raise multiple affirmative defenses. Among other things, Defendants argue that the Plaintiff did not follow the notice provisions of the Maine Tort Claims Act ("MTCA"); the claims are barred by the immunity provisions of the MTCA; the complaint fails to state a claim upon which relief may be granted; and, there has been insufficient service of process.

Plaintiff filed a document on March 26, 2019 notifying the Court that she was incarcerated in Clearwater, Florida and that she had not received any correspondence in regard to this case. Despite the fact that she was no longer incarcerated at ACJ, Plaintiff stated that she still wished to proceed with the lawsuit. In this filing Smith also asked for an extension to answer the Defendants' request for interrogatories and production of documents. The Court granted her an extension of 45 days to answer the Defendants' interrogatories and produce documents.

On April 25, 2019, Defendants filed a motion to extend the time to complete discovery and file motions. The Court ordered that the deadline to complete discovery was extended to July 23, 2019, and the deadline to file motions was extended to August 22, 2019.

Smith then filed a two-part request with the Court asking the Court to provide the names of any insurance companies that are used by ACJ, Androscoggin County Sheriff's Department, and the County of Androscoggin. The second part of Smith's request asked the Court to order that she undergo extensive psychological and neuropsychological stage 1, 2, and 3 evaluations as well as a competency evaluation to be paid for by either the State of Maine, Androscoggin County, or

2

the Defendants. Smith claims these evaluations are necessary to "preserve evidence in the form of expert testimony and opinion, as well as diagnosis, and to help professionally determine the damage done and injuries sustained by the defendants, both mentally/psychologically, and physically." Plaintiff further asks the Court to "preserve her rights as far as the fact that Plaintiff identifies as female and preserve Plaintiff's rights accordingly, and ensure equal treatment by any entity that the Plaintiff comes into contact with, or any facility Plaintiff is housed at from now on." In a later filing, Smith claims that she notified jail officials that she identified as female; was discriminated against by being called "fag" and asked if she "gave up her man card"; and asked to be housed with other females.

On August 26, 2019, Plaintiff was extradited back to Maine from Florida. Upon her arrival to Maine, Smith was placed at ACJ but was transferred to Cumberland County Jail shortly after arriving at ACJ. However, on September 12, 2019, Smith was transferred back to ACJ due to behavioral issues.

On September 16, 2019, Attorney Laura Maher entered her appearance as attorney for the Defendants. A few days later, on September 20, 2019, Defendants filed a motion for leave to amend and refile their motion for summary judgment, followed by their revised motion for summary judgment on October 2, 2019.

Plaintiff then filed a motion entitled "Plaintiff's Motion/Petition for Writ of Habeas Corpus" on September 23, 2019. In this motion, the Plaintiff asks the Court to place her with the Department of Health and Human Services until the conclusion of her criminal case.

Finally, Smith filed her amended complaint on September 30, 2019. In her amended complaint, Smith more coherently and comprehensively lays out her claims against the Defendants. Smith claims that, during her first stint at ACJ, a former correctional officer named

3

Robitaile called her a "faggot" and threatened her physically if he ever saw her outside of ACJ.

Next, Smith claims that a correctional officer named Litchfield was verbally harassing a mentally

challenged inmate and after Smith told him to stop, Litchfield entered Smith's cell and physically

assaulted her.

> He opened my door . . . came in my room [slammed] me on the ground, I hit
> my head and momentarily lost consciousness, when I opened my eyes he was
> kicking my ribs screaming get up, when I did he slammed me again against
> the right wall by grabbing me by the throat and testicles/groin tripping me
> across the bed where I smashed head again on wall, spun me, slammed me
> face first into wall punched me in the ribs and then yelled for LaJoy "officer"
> who finally entered the block cuffed me and took me to an observation cell
> without further incident, after this I was humiliated multiple separate times
> and assaulted during strip searches and room searches, I decided to start
> reporting but it fell on deaf ears, I filed this lawsuit and continued getting
> threats and abuse from many staff to include c/o Robitaile, C/O Litchfield,
> C/O Corporal Gendron, C/O Leduc, now Captain Feldman.

(Pl. Amended Compl. 1-2.) Smith then claims she was released from ACJ on 9/16/18. After being

released, she was subsequently arrested and incarcerated in Florida. Upon release from prison in

Florida, she was extradited back to Maine and held at ACJ. Upon her arrival at ACJ, Smith claims

that she was not fed or allowed to shower. Smith does not state when she was fed but she claims

she was not allowed to shower for five days. When she arrived at ACJ, Smith claims she was

assaulted by an officer who said he needed to search her.

> He said he had something special for me and asked if I was the faggot with
> the lawsuit, he forced me to strip naked and first maneuver my penis and
> testicles in an abnormal fashion for a search, this did not please him and he
> grabbed a handful of my privates and jerked them menacingly which caused
> great pain, when I tried to move he told me if I moved without being told I
> would be maced. He then told me to turn around and bend at the waist and
> take both hands and with my fingers spread my buttcheeks from as close to
> my anus as I can, I said that's not normal he said do it, I did because I was
> petrified, when I again did not please him he said "come on spread that hole"
> I said fuck that, he rushed me in to the corner and spread my cheeks himself,
> I struggled to get away and he threw me judo style down hard I hit my head
> on concrete lost consciousness and when I awoke in the shower room I was
> alone and naked on the floor.

4

(Pl. Amended Compl. 2-3.)

When Smith was brought back to ACJ after her brief stint at the Cumberland County Jail, she was initially housed with the female inmates—as she had been requesting—however Smith claims that she was "put in max for passing notes." On 9/23/19, Smith claims that she was brought into a room and threatened by Lane Feldman. According to Smith, Feldman said that

> You are not a gender identifying female you're just a regular faggot and a sexual predator, . . . then he explained I never should have filed lawsuits and it doesn't matter what I say and the system looks out for one another, and if I ever use his first name again he and I would go rounds, He said get comfortable cause he's burying me in max and no one can help you it doesn't matter who you write what we say is the truth, we are the "good guys" and don't you remember the little interview room you were brought to way down in the basement? . . . there's only one or two ways out of here, in a bodybag, or released to the streets or prison. A lot of "unfortunate accidents" can be manifested to cover up your death, so if you want to leave and don't want any more problems just write the DA's office and tell them you wanna change your mind and be guilty and go to prison cause that's the only way to leave, no one is gonna help you get housed anywhere else, you're stuck.

(Pl. Amended Compl. 3.)

Finally, Smith states that she is suing for four million dollars and asks the Court to order various evaluations—both physical and psychological—due to the abuse she has suffered, and that she be housed elsewhere.

III.   **Analysis of Pending Motions**

   a.   **Plaintiff's Motion for Injunction (August 6, 2019)**

In the Plaintiff's Motion for an Injunction, Smith argues that she has been the victim of threats and assaults by Androscoggin County Jail officials and therefore asks this Court order an injunction that would disallow any contact between her and officers at the jail and further prevent her from being housed at that facility at least until the conclusion of this case. This motion is now moot because of the resolution of other motions in this case.

5

### b. Defendants' Motion for Summary Judgment (August 22, 2019)

This motion is moot. The Defendants have filed a revised motion for summary judgment which the Court will consider.

### c. Defendants' Motion for Leave to Amend and Refile Motion for Summary Judgment (September 20, 2019)

Defendants request leave to amend their motion for summary judgment on the grounds that Smith was incarcerated in Florida at the time their initial motion for summary judgment was filed and she has since been extradited back to Maine. Due to the changing circumstances of this case, the motion to amend and refile their motion for summary judgment is granted.

### d. Plaintiff's Petition for Writ of Habeas Corpus (September 23, 2019)

The Plaintiff filed a motion entitled "Plaintiff's Motion/Petition for Writ of Habeas Corpus" on September 23, 2019. However, the only relief the Plaintiff seeks is to be housed in a facility that is not ACJ. Due to her mental health issues, Plaintiff asks to be transferred into the custody of the Commissioner of the Department of Health and Human Services ("DHHS"). At the time this motion was filed, Smith had not been convicted of the crime for which she was in custody. Despite the title of the motion, it appears Smith is asking the Court to review the decision of ACJ and other facilities to refuse to transfer Smith somewhere other than ACJ.

The Court's authority to review this action by Androscoggin County Jail arguably comes from 5 M.R.S. § 11001(2). "Any person aggrieved by the failure or refusal of an agency to act shall be entitled to judicial review thereof in the Superior Court. The relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain." 5 M.R.S. § 11001(2).

ACJ has been willing in the past to transfer Smith to another facility but unfortunately Cumberland County Jail sent her back to ACJ. While the Court agrees that it would be in both

6

parties' best interest for Smith to be housed elsewhere during the pendency of this litigation, this motion is moot due to the Court's decision on the Defendants' motion for summary judgment.

### e. Plaintiff's Motion for Summary Judgment (September 23, 2019)

#### i. Procedural Requirements

Strict obedience to the procedural requirements set forth in M.R. Civ. P. 56 "is necessary to ensure that the [summary judgment] process is both predictable and just." *Cach, LLC. V. Kulas*, 2011 ME 70, ¶ 12, 21 A.3d 1015. The linchpin of this practice is the parties' statements of material facts, which must be drafted in the form of short and concise paragraphs that are organized by number. M.R. Civ. P. 56(h); see *Stanley v. Hancock Cnty Comm'rs*, 2004 ME 157, ¶¶ 27-29, 864 A.2d 169. Each statement of fact must include reference to record evidence that would be admissible at trial, and "the absence of supporting record references . . . is fatal to the motion." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653.

Here, Plaintiff has failed to adhere to the procedural requirements governing motions for summary judgment. The Plaintiff has failed to provide the Court with any documents to support her motion. Even if the Court were to assume that her motion contains the necessary statement of material facts, there are no citations to record evidence that would be admissible at trial. Because "the absence of supporting record references . . . is fatal to the motion[]", *Levine*, 2001 ME 77, ¶ 9, 770 A.2d 653, the Plaintiff's motion for summary judgment must be denied.

### f. Plaintiff's Motions to Amend Complaint (September 11, 2019 and September 30, 2019) and Defendants' Revised Motion for Summary Judgment (October 2, 2019)

The Defendants' revised motion for summary judgment is based off of the Plaintiff's initial complaint in this matter. However, the Plaintiff filed a motion to amend her complaint on September 11, 2019 and followed it with another motion to amend her complaint—with her

proposed amended complaint attached—on September 30, 2019. Less than a week later—on October 2, 2019—the Defendants filed their revised motion for summary judgment.

This case has been pending for some time and the Court believes it would not be in the interest of justice to delay the proceedings even more. Therefore, the Plaintiff's motions to amend her complaint are denied and the Court will analyze the Defendants' revised motion for summary judgment.

### *i. Procedural Requirements*

Strict obedience to the procedural requirements set forth in M.R. Civ. P. 56 "is necessary to ensure that the [summary judgment] process is both predictable and just." *Cach, LLC. v. Kulas*, 2011 ME 70, ¶ 12, 21 A.3d 1015. The linchpin of this practice is the parties' statements of material facts, which must be drafted in the form of short and concise paragraphs that are organized by number. M.R. Civ. P. 56(h); see *Stanley v. Hancock Cnty Comm'rs*, 2004 ME 157, ¶¶ 27-29, 864 A.2d 169 (opining that courts may disregard excessively long statements and deny motions supported by such statements). Each statement of fact must include reference to record evidence that would be admissible at trial, and "the absence of supporting record references . . . is fatal to the motion." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653. The court has no independent duty to consider any part of the record not referenced in the statement, M.R. Civ. P. 56(h)(4); *See Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶ 8, 12, 985 A.2d 508, and is barred from searching the record to locate facts that may support the party's statement, *Levine*, 2001 ME 77, ¶ 9, 770 A.2d 653. Each statement must include a reference to facts in the record of the quality that would be admissible at trial, including *any* statement under oath, such as affidavits, interrogatories, depositions, hearings, *MSBA Practice Series Maine Rules of Civil Procedure* 386 (Hon. Donald G. Alexander et al. eds., 2008); any other document with potential evidentiary

significance at trial, such as a stipulation, public record, or response to request for admission, *id.*; and any unopposed, unanswered, or improperly opposed request for admission, M.R. Civ. P. 36. Any affidavit referenced in the statement of material facts must affirmatively demonstrate that the affiant is competent to testify on the matters addressed in the affidavit. *Platz Assoc. v. Finley*, 2009 ME 55, ¶ 16, 973 A.2d 743.

The factual record reviewed on summary judgment is comprised of statements of fact either admitted-to or not properly controverted by the opposing party through its opposing statement of facts. M.R. Civ. P. 56(h)(4). This opposing statement cannot state or comingle new facts; they will be disregarded unless stated separately. *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 11, 824 A.2d 48. In its statement, the opposing party must explicitly admit to facts by reference to each numbered paragraph or deny or qualify each statement by adducing to part of the record. *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169; M.R. Civ. P. 56(h)(2). Statements are deemed admitted in their entirety if not explicitly and properly denied or qualified, such as when the opposing party admits to a portion of it or to a particular interpretation of the statement but then denies or qualifies the rest because an admission must begin with the designation "'[a]dmitted' . . . and shall end with such designation." M.R. Civ. P. 56(h)(2) (emphasis added); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 15, 951 A.2d 821; M.R. Civ. P. 56(h)(4). A statement is also admitted as not properly controverted when the opposing party raises an objection but fails to further qualify or deny the statement. M.R. Civ. P. 56(h)(2) ("In addition to any denial or qualifications, the party opposing summary may note any objections to factual assertions made by the moving party . . . .") (emphasis added); M.R. Civ. P. 56(h)(4).

*ii. Substantive Standard*

Summary judgment is not a substitute for trial when a material fact is in dispute, *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, nor an arena for trial by affidavit, *Hutz v. Alden*, 2011 ME 27, ¶ 16, 12 A.3d 1174. Instead, summary judgment is proper only when a review of the parties' statements of material facts and the record evidence to which they refer, considered in the light most favorable to a nonmoving party, establishes that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Estate of Kay v. Estate of Wiggins*, 2016 ME 108, ¶ 9, 143 A.3d 1290. A contested fact is "material" if has the potential to influence the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. A "genuine" issue of material fact exists if the factfinder must decide between competing versions of the truth. *Lewis*, 2014 ME 34, 87 A.3d 732. Judgment as a matter of law is not warranted if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim." *Merriam v. Wanger*, 2000 ME 159, ¶ 7, 757 A.2d 778. When material facts are contested, the dispute must be resolved through fact-finding at trial—"even if the likelihood of success at trial by on party or another is small." *Rose v. Parsons*, 2014 ME 73, ¶ 4, 118 A.3d 220; *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

If a properly supported motion is filed, then the burden shifts to the nonmoving party to demonstrate that a factual dispute exists sufficient to establish a prima facie case for each element of the claim or defense in order to avoid summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the nonmoving party is assessed for sufficiency—not persuasiveness—such that a court can make a factual determination without speculating. *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

### iii. Summary Judgment Record

Plaintiff has not filed an opposition to the Defendants' motion for summary judgment nor has Smith filed responses to the Defendants' statement of material facts. Therefore, all of the Defendants' properly supported material facts are deemed admitted. M.R. Civ. P. 56(h)(4). The material facts can be summarized as follows.

Smith was incarcerated at ACJ from May 14, 2017 to the date she filed her initial complaint. (Def. S.M.F. ¶ 1.) Smith, however, was not incarcerated at ACJ from September 7, 2018 – August 26, 2019. (Def. S.M.F. ¶ 2.) On August 26, 2019, Smith was extradited to Maine from Florida by Maine Probation and Parole. (Def. S.M.F. ¶ 68.) When Smith initially arrived back in Maine, she was incarcerated at ACJ where she was being held while facing probation violations and new pending criminal charges. (Def. S.M.F. ¶ 69.) Within days of arriving at ACJ, Smith was transferred to Cumberland County Jail where it was intended she would remain until the resolution of her criminal matters or of this case, whichever came first. (Def. S.M.F. ¶ 70.) On September 12, 2019, Smith was transferred back to ACJ due to "behavioral issues" at Cumberland County Jail. (Def. S.M.F. ¶¶ 71-72.)

While incarcerated at ACJ Smith alleges she was physically and sexually assaulted; including being choked, punched in the ribs, and grabbed by the neck of her shirt and genitals and pushed into her cell. (Def. S.M.F. ¶¶ 5, 6, 10.) Smith alleges that she was threatened with death and serious bodily injury after telling officers that she is anatomically male but identifies as a woman. (Def. S.M.F. ¶ 11.) Smith also alleges that she was sexually harassed by being called a "faggot and a sissy." (Def. S.M.F. ¶ 12.) Smith then claims that when she reported the abuse, she was locked in maximum security where she was again threatened. (Def. S.M.F. ¶ 13.)

11

Despite these allegations, Smith is not aware of any "photographs, audio or video recordings, plans, maps, reports, statements, documents, or any other tangible items that would support [her] claims." (Def. S.M.F. ¶ 16.) Further, despite alleging she suffered broken ribs, a possibly torn rotator cuff, injuries to her ankle and back, as well as emotional and mental injuries, Smith did not seek and treatment for the injuries she alleges as a result of these incidents. (Def. S.M.F. ¶¶ 17-19.)

In January of 2018, Chief Deputy for the Androscoggin County Sheriff's Department, William Gagne, was tasked with investigating Smith's claims. (Def. S.M.F. ¶ 20.) Gagne interviewed Smith twice as a part of his investigation. (Def. S.M.F. ¶ 26.) On the first occasion, Smith alleged that she had been sexually harassed and abused by other inmates and four members of the staff at ACJ. (Def. S.M.F. ¶ 27.) Smith indicated that she knew the names of the officers but refused to provide them without her lawyer present. (Def. S.M.F. ¶ 28.) During the second interview, Smith claimed that she was struck in the ribs as she was being removed from Classroom 302 after an incident with another inmate. (Def. S.M.F. ¶ 30.) Smith did not have any marks on her body as a result of the incident nor did she seek medical attention or report the alleged assault. (Def. S.M.F. ¶¶ 31-33.) Smith then told Gagne that she was sexually harassed by a corrections officer who no longer worked at ACJ. (Def. S.M.F. ¶ 34.) Despite not remembering the officer's name, Smith claimed the officer repeatedly called her a "faggot." *Id.*

Also during the second interview, Smith told Gagne about an incident in which she claims she was sexually assaulted at ACJ. (Def. S.M.F. ¶ 35.) During this incident Smith was in maximum security having a "melt down" when one of the corrections officers grabbed her by the shirt and "crotch area" and pushed her into a cell. *Id.* Gagne claims that Smith said that she was not injured in the incident nor did she report this incident to anyone in the jail. (Def. S.M.F. ¶¶ 36-37.) Gagne

12

then reviewed Smith's inmate file from the ACJ. (Def. S.M.F. ¶ 48.) Gagne determined there was no credible evidence to support Smith's claims. (Def. S.M.F. ¶ 51.)

The ACJ has a grievance procedure available to inmates in which an inmate may file a grievance if they believe violations of any of the following have occurred: constitutional rights, federal or state law, State of Maine Jail Standards, or jail policies and procedures. (Def. S.M.F. ¶¶ 52-53.) Pursuant to the policy, inmate grievances must be filed no later than five working days after the alleged violation occurs and the Supervising Officer will provide the inmate with a receipt once the grievance has been received. (Def. S.M.F. ¶¶ 54-55.) Inmates who are not satisfied with the resolution of a grievance have five working days after receipt of the grievance decision to appeal to the Jail Administrator. (Def. S.M.F. ¶ 58.) When an inmate's grievance is based on non-compliance of a State of Maine Jail Standard the inmate may file a complaint with the Maine Department of Correction, Inspection Division, for further review. (Def. S.M.F. ¶ 60.) Smith never filed a formal grievance or appeal. (Def. S.M.F. ¶¶ 61-63.)

At all times relevant to Plaintiff's Complaint, Androscoggin County was a member of the Maine County Commissioners' Association Self-Funded Risk Management Pool. (Def. S.M.F. ¶ 64.) Apart from the coverage afforded by the Risk Management Pool, the County did not have any liability insurance coverage for 2017 and 2018. (Def. S.M.F. ¶ 66.)

### iv. Analysis

### 1. Tort-Based Claims

The Defendants' first argue that to the extent the Plaintiff is asserting tort claims against Androscoggin County, the claims are barred by the Maine Tort Claims Act ("MTCA").

13

As a general matter, the MTCA provides that "all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103(1). Counties are included in the definition of "governmental entity." 14 M.R.S. § 8102(2), (3).

The MTCA allows for governmental entities to retain their immunity when they are performing discretionary functions. 14 M.R.S. § 8104-B(3). The Law Court has established a "four-factor test to determine whether discretionary immunity applies." *Roberts v. State*, 1999 ME 89, ¶ 8, 731 A.2d 855.

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the, challenged act, omission, or decision?

*Id.* The Law Court has held that the "management and care of prisoners is a discretionary function." *Id.* at ¶ 9. The federal district court for the District of Maine came to the same conclusion. *Id.* (citing *Ellis v. Meade*, 887 F. Supp. 324 (D. Me. 1995)).

The four factors are satisfied here. As to the first factor, the Law Court has said "there can be no dispute that corrections is a basic governmental program and that the supervision of inmates is essential to a corrections program." *Id.* at ¶ 10. Any claim arising out of allegations that Smith was injured due to acts by prisoner guards in the process of supervising or controlling her cannot succeed as "the four-factor test compels the conclusion that [the] alleged tortious acts were performed as part of a discretionary function." *Id.* Therefore, summary judgment should be granted in regard to any tort-based claims Smith alleges in her complaint.

## 2. *Claims for Damages*

The Defendants point out that Smith does not allege any claims for damages in her first compliant, but she does ask for damages in other filings—namely, in her answers to interrogatories and her amended complaint. Defendants nevertheless argue that any claims for damages that Smith may assert against Androscoggin County fail as a matter of law.

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by the prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court has clarified the practical meaning of § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The Court went to great lengths to establish that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Court went on to clarify that in order to exhaust administrative remedies "prisoners must complete the administrative review process in accordance with the applicable procedural rules, . . .—rules that are defined not by the PLRA, but the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Even viewing the facts in a light most favorable to Smith, as the non-moving party, it would be a stretch to say that Smith exhausted ACJ's grievance procedure.[1] Despite the fact that Smith was not required to affirmatively show that she exhausted ACJ's administrative remedies, the

---

[1] Smith does state in her amended complaint that she "decided to start reporting but it fell on deaf ears." However, there is no evidence that she made formal complaints, let alone exhausted the ACJ's administrative process.

15

Defendants properly raise the defense of failure to exhaust. Further, it is uncontroverted that ACJ has an established grievance procedure in place, (Def. S.M.F. ¶¶ 52-60), and that Smith never filed a grievance with ACJ. (Def. S.M.F. ¶¶ 61-63.) The only argument that could be made in favor of exhaustion is the fact that Smith informally raised her complaints with officials at ACJ to the point that she was actually transferred to another facility. However, the First Circuit has rejected the proposition that the transfer of an inmate to another facility satisfies the exhaustion requirement. *See Medina-Claudio v Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002). The Court agrees with the Defendants; any claims Smith attempts to raise under § 1983 must be dismissed for failure to exhaust administrative remedies pursuant to the PLRA.

IV.    **Conclusion**

In conclusion, the Plaintiff has failed to respond to the Defendants motion for summary judgement and has failed to meet the necessary procedural requirements before bringing her suit. Due to her failure to exhaust administrative remedies and immunity granted to governmental entities, summary judgment in favor of the Defendants is appropriate.

The entry is:

1.  Defendant's Motion to for Summary Judgment is hereby GRANTED.

Pursuant to M.R. Civ. P. 79(a) the Clerk is hereby directed to incorporate this Order by reference in the docket.

Date:  June 22, 2020

MaryGay Kennedy
Justice, Superior Court

16