Docket No. RE-2018-273



DEBORAH L. OGLE,

    Plaintiff/Counterclaim
    Defendant,

v.

OVERLOOK ROAD AT BRIDGTON
ASSOCIATION,

    Defendant/Counterclaim
    Plaintiff.

**ORDER ON
DEFENDANT/COUNTERCLAIM
PLAINTIFF'S MOTION TO AMEND
OR SUPPLEMENT JUDGMENT**

Before the Court is Defendant/Counterclaim Plaintiff Overlook Road at Bridgton Association's ("the Association") Motion to Amend or Supplement Judgment. For the following reasons, the Court denies the motion.

On November 25, 2019, the Association moved for summary judgment on all counts of its Counterclaim and Plaintiff/Counterclaim Defendant Deborah L. Ogle's Complaint. The Court, by order dated August 18, 2020 ("the Order"), granted the Association's Motion for Summary Judgment as to Counts I and II of the Counterclaim and Counts II, III, and IV of Ms. Ogle's Complaint. Regarding Counts I and II of the Counterclaim, the Order concluded that "[t]he liens placed against Ogle [for unpaid assessments and interest] totaling $1852.50 plus accruing interest of $147.50 per year are valid."[1] Following entry of the Order, only Count I of the Complaint, breach of contract, remains.

The Association now requests that the Court (1) permit testimony at trial on

---

[1] Counterclaim Counts I and II concerned Ms. Ogle's failure to pay certain assessments to the Association. The summary judgment record established that Ms. Ogle had failed to pay a 2018-19 assessment and supplemental assessment as well as accrued interest on 2016-17 and 2017-18 assessments.

REC'D CUMB CLERKS OFC
FEB 1 '23 PM 2:44

"additional assessments, fees, and interest, having come due during the pendency of this litigation," and (2) modify the Order to "account for" those additional assessments, fees, and interest. (Def.'s Mot. to Am. or Suppl. J. 2.) Ms. Ogle opposes the motion.

The parties dispute whether the Order was a final judgment. The Order was not a final judgment because it did not dispose of all claims in this matter. *See* M.R. Civ. P. 54(b)(1). Nor did it contain an express finding that there was no just reason for delay of entry of final judgment on the Counterclaim. *See id.* The Association is therefore correct that the Order may be revised at any time before entry of final judgment. *See id.; Dep't of Env't Prot. v. Woodman*, 1997 ME 164, ¶ 4, 697 A.2d 1295.

The Court, however, declines to revise the Order in the manner requested. Although the Court recognizes that the long pendency of this case is not entirely attributable to the parties, the Court is reluctant to permit testimony at trial related to an issue on which the Association chose to move for summary judgment.[2] Moreover, with trial very near, prejudice may result to Ms. Ogle if the Court were to grant the Association's motion. Accordingly, the Court denies the motion.

The entry is:

Defendant/Counterclaim Plaintiff Overlook Road at Bridgton Association's Motion to Amend or Supplement Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _February 1, 2023_

_____
MaryGay Kennedy, Justice
Maine Superior Court

---

[2] It is at least arguable that the relief the Association requests in the present motion exceeds the scope of the relief sought in its Counterclaim and Motion for Summary Judgment.

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: RE-18-273

DEBORAH L. OGLE,

          Plaintiff,

v.

OVERLOOK ROAD AT
BRIDGTON ASSOCIATION,

          Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 18 2020

RECEIVED

## I.   **INTRODUCTION**

Before the Court is Overlook Road at Bridgton Association's ("Association" or

"Defendant") motion for summary judgment. Deborah Ogle ("Ogle" or "Plaintiff") filed a four-

count complaint and the Association filed a two-count counterclaim. The Association's motion

seeks summary judgment on all six counts.

For the following reasons, the Defendant's motion for summary judgment as it pertains to

Count I of the Plaintiff's Complaint is hereby DENIED and the Defendant's motion for summary

judgment as it pertains to Counts II, III, and IV of the Plaintiff's Complaint and Counts I and II

of the Defendant's Counterclaim is hereby GRANTED.

## II.   **SUMMARY JUDGMENT RECORD**

The Association was formed in 1996 by the owners of property abutting a road in

Bridgton formally known as Overlook Road and now known as Kezar Heights Road ("Road").

(Def.'s S.M.F. ¶ 1.) The Association's original bylaws were executed by all owners along the

road, including Robert and Jahala Porto, and bound all of them and their heirs and assigns.

For Plaintiff: Elliott R. Teel, Esq.

1

For Defendant: David Ginzer, Esq.

(Def.'s S.M.F. ¶ 2.) The Association was formed for the purposes of maintaining the Road and allowed the Association to collect fees from the members to do so. (Def.'s S.M.F. ¶ 3.) In 2002, Ogle purchased her property from Robert and Jahala Porto. (Def.'s S.M.F. ¶ 4.) The Association documents were both recorded and provided to Ogle at the time she purchased her property. (Def.'s S.M.F. ¶ 5.)

In 2005, Ogle conveyed her property to Deborah L. Ogle, Trustee of the Deborah Lee Ogle Revocable Trust. (Def.'s S.M.F. ¶ 6.) From 2003 to 2006, Ogle was listed as the Secretary/Clerk of the Association, but in practice, according to Ogle, she was only the Clerk. (Def.'s S.M.F. ¶ 7.) The fee interest in the Road was held by property owners abutting the roads subject to an easement. (Def.'s S.M.F. ¶ 8.) Prior to 2005, Association members, including those along Kezar Heights Road, agreed, without opposition, to the following to better organize the Association: Peter Mahar would obtain subdivision approval for the Kezar Heights subdivision that had not been obtained by the original developer; they would allow for additional development within the Association; Mahar would improve the Association road; to the extent they had a fee interest in Kezar Heights Road, the owners along the Road would deed ownership of the road to the Association; and they would update the Association documents. (Def.'s S.M.F. ¶ 9.) In 2005, Mahar was the president of the Association. (Def.'s S.M.F. ¶ 10.) Mahar had counsel prepare a deed from the abutting property owners conveying the Road to the Association. (Def.'s S.M.F. ¶ 11.) Mahar also obtained signatures of all the abutting owners for the deed either in person or by mail. (Def.'s S.M.F. ¶ 12.) According to Mahar, he asked Ogle to sign the deed on behalf of her Trust before a notary public. (Def.'s S.M.F. ¶ 13.) Ogle, however, denies the document presented to her was the deed in question. *Id.* Mahar received a signed deed from Ogle, however, Ogle reasserts her belief that she was not given the correct and/or entire

2

deed. (Def. S.M.F. ¶ 16.) Mahar then recorded the deed at the Cumberland County Registry of Deeds. (Def.'s S.M.F. ¶ 17.)

In 2005 and 2006, the Association adopted the First, Second, and Third Amendments. (Def.'s S.M.F. ¶ 18.) The primary effect of these Amendments was to include the properties on White Mountain Way and David's Way in the Association membership. *Id*. At the Association annual meeting on May 21, 2006, Mahar provided a binder containing the 2005 deed and the Association documents created to date. (Def.'s S.M.F. ¶ 19.) At the same meeting, Ogle said to Mahar that she believed that the deed was fraudulently obtained. (Def.'s S.M.F. ¶ 20.)

In 2008, the Association filed a small claims matter against Ogle to recover assessments. (Def.'s S.M.F. ¶ 21.) The Association prevailed in the small claims matter and Ogle, while represented by counsel, appealed the judgment. (Def.'s S.M.F. ¶ 22.) Ogle argued that the Association was not properly formed, the Association documents were invalid, and she was not bound by them. (Def.'s S.M.F. ¶ 23.) The parties then attended a judicial settlement conference with Justice Bradford where the parties reached a Mutual Release. (Def.'s S.M.F. ¶¶ 24-25; Pl.'s Opp. S.M.F. ¶ 1.) The Mutual Release incorporated a Fourth Amendment to the Association Bylaws and Restated Articles of Incorporation which were part of the settlement agreement. (Def.'s S.M.F. ¶ 25.) Ogle agrees that she executed the Mutual Release and that it is binding on the parties. (Def.'s S.M.F. ¶ 26.) The Fourth Amendment and Articles of Incorporation contained certain concessions to Ogle in consideration of the resolution of the lawsuit. (Def.'s S.M.F. ¶ 27.) Those concessions included, but were not limited to, how Ogle was to be assessed and a requirement that any change in Association assessment formula or allocations would require a 100% vote. (Def.'s S.M.F. ¶ 28.) The purpose was to protect Ogle from any changes. (Def.'s S.M.F. ¶ 29.) By agreeing to the Mutual Release and the new Association Documents, Ogle

3

released any claim she had regarding the invalidity of any of the Association Documents. (Def.'s S.M.F. ¶ 30.) The return consideration was that by signing on to a release incorporating a Fourth Amendment and the Articles of Incorporation that met her satisfaction; the concerns regarding the legitimacy of the Association; the Association's right to assess the property; the Association membership, including the developments on White Mountain Way and David's View; and the rights and obligations of Ogle and the Deborah Lee Ogle Revocable Trust as a member of the Association were all resolved. (Def.'s S.M.F. ¶ 31.) The litigation was dismissed with prejudice. (Def.'s S.M.F. ¶ 32.)

As part of the Mutual Release, the Association agreed to extend electricity along the length of Kezar Heights Road to Ogle's property once she obtained a building permit. (Def.'s S.M.F. ¶ 33.) The Association had previously provided electrical service to residents when they built a home. (Def.'s S.M.F. ¶ 34.) Ogle obtained a building permit and paid CMP to extend electricity. (Def.'s S.M.F. ¶ 35.) On July 20, 2011, Ogle submitted the invoice to the Association asking for reimbursement. (Def.'s S.M.F. ¶ 36.) By October 2011, Ogle was reimbursed. (Def.'s S.M.F. ¶ 37.) Then, in July 2016, Ogle informed the Association that she had obtained a building permit for a "garage" to "store stuff" and asked the Association to extend power to the structure. (Def.'s S.M.F. ¶¶ 38-39; Pl.'s Opp. S.M.F. ¶ 2.) On November 6, 2016, a Special Meeting of the Membership was held, and the Association voted to deny Ogle's request to pay for the further extension of electric service. (Pl.'s Opp. S.M.F. ¶ 3.)

In April of 2017, Ogle filed a Motion to Enforce the Mutual Release regarding the Association's decision not to provide electrical service to her garage. (Def.'s S.M.F. ¶ 59; Pl.'s Opp. S.M.F. ¶ 6.) The Association filed a Response to the Motion to Enforce, however, the Court dismissed the motion as moot. (Def.'s S.M.F. ¶ 60; Opp. S.M.F. ¶ 60; Pl.'s Opp. S.M.F. ¶ 7.)

4

Through interrogatories, Ogle was asked to identify all her damages, as well as documentation of those damages, but only identified damages arising out of the denial of her request that the electrical service be extended. (Def.'s S.M.F. ¶ 61.) Ogle was unable to identify an agreement for constructing a garage due to no electric nor provide a value for those damages. (Def.'s S.M.F. ¶ 62.) Ogle was unable to identify why she could not sell lots "due to no electric," or that she has tried to sell a lot. (Def.'s S.M.F. ¶ 63.) She could provide no reason she could not extend electricity to a new lot on her own. *Id.* The only exact value she provided on damages was the cost of a building permit which she testified was $25. (Def.'s S.M.F. ¶ 64.)

The 2014 Restated Articles of Incorporation permit the Association to assess the members. (Def.'s S.M.F. ¶ 41.) When a member does not pay, the Articles permit a lien against the lot for unpaid assessments, allow for 10% interest, and allow the expenses of collection including attorney's fees. (Def.'s S.M.F. ¶ 42.) Ogle eventually paid the 2016-2017 and the 2017-2018 assessments, but failed to pay the cost of liens and interest on her overdue payments totaling $290. (Def.'s S.M.F. ¶ 43.) Since then, Ogle has failed to pay the 2018-2019 assessments in the amount of $600 and a supplemental assessment of $275 due by December 20, 2018. (Def.'s S.M.F. ¶ 44.) Pursuant to the Paragraph Seventh 2010 Restated Articles of Incorporation, the Articles of Incorporation specifically incorporate and include "the Bylaws of the Corporation as amended from time to time." (Def.'s S.M.F. ¶ 45.) At subsequent meetings of the Association, Ogle was denied the right to vote. (Pl.'s Opp. S.M.F. ¶ 5.) However, the Seventh Amendment to the Bylaws suspends the right of members to vote or actively participate in meetings unless they are up to date with their assessments. (Def.'s S.M.F. ¶ 46.) After execution of the Mutual Release, the Association adopted and recorded the Fourth Amendment and the 2010 Restated Articles of Incorporation. (Def.'s S.M.F. ¶ 47.)

5

On February 13, 2018, Ogle filed a Notice to Prevent Acquisition of Easement and/or Property at the Registry of Deeds. (Def.'s S.M.F. ¶ 40; Pl.'s Opp. S.M.F. ¶ 9.)

Also In 2018, the Town of Bridgton gave notice that the conveyance of the road may have violated the subdivision approval that the Town granted to the Kezar Heights subdivision. (Def.'s S.M.F. ¶ 49.) The conveyance of the Road by the 2005 deed may have reduced some of the lot sizes to less than 5 acres. *Id.* When the Association deeded ownership back to some of the residents, the deed required that the residents acknowledge the Association's rights to maintain and regulate the road and allow all of its members to use the road. (Def.'s S.M.F. ¶ 51.) Most, if not all, of the original owners of property that included the road accepted the Association's offer to retain the right to maintain and regulate the road in exchange for deeding ownership back to the residents. (Def.'s S.M.F. ¶ 52.) Ogle, however, refused to sign the deed presented to her. (Def.'s S.M.F. ¶ 53.)

As of November 15, 2019, the interest on the late 2018-2019 assessments was $87.50. (Def.'s S.M.F. ¶ 55.) The 2019-2020 assessment in the amount of $600 became due on August 1, 2019 and has not been paid. (Def.'s S.M.F. ¶ 56.) In total, Ogle owes $1852.50; this total includes $1475.00 in assessments, interest accrued as of November 15, 2019, and the cost of liens. (Def.'s S.M.F. ¶ 57.) In addition, Ogle owes accruing interest of $147.50 per year, as well as attorney's fees. (Def.'s S.M.F. ¶ 58.)

III. **ANALYSIS**

a. Summary Judgment Standard

Summary judgment is not a substitute for trial when a material fact is in dispute, *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, nor an arena for trial by affidavit, *Hutz v. Alden*, 2011 ME 27, ¶ 16, 12 A.3d 1174. Instead, summary judgment is proper only when a

6

review of the parties' statements of material facts and the record evidence to which they refer, considered in the light most favorable to a nonmoving party, establishes that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Estate of Kay v. Estate of Wiggins*, 2016 ME 108, ¶ 9, 143 A.3d 1290. A contested fact is "material" if has the potential to influence the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. A "genuine" issue of material fact exists if the factfinder must decide between competing versions of the truth. *Lewis*, 2014 ME 34, 87 A.3d 732. Judgment as a matter of law is not warranted if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim." *Merriam v. Wanger*, 2000 ME 159, ¶ 7, 757 A.2d 778. When material facts are contested, the dispute must be resolved through fact-finding at trial— "even if the likelihood of success at trial by one party or another is small." *Rose v. Parsons*, 2014 ME 73, ¶ 4, 118 A.3d 220; *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

If a properly supported motion is filed, then the burden shifts to the nonmoving party to demonstrate that a factual dispute exists sufficient to establish a prima facie case for each element of the claim or defense in order to avoid summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the nonmoving party is assessed for sufficiency—not persuasiveness—such that a court can make a factual determination without speculating. *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

b.  Complaint Count I: Breach of Contract (Mutual Release Agreement)

7

Count I of the Plaintiff's Complaint comes down to whether or not, under the Mutual Release, the Association was obligated to pay to have power extended to Ogle's new structure. The language in question reads as follows:

> The parties also agree that the Association will pay to have the electrical service completed along the length of Kezar Heights Road and specifically brought in front of Ogle's property when Ogle its successor or assigns receives a building permit for the property at no direct or indirect expense to or as an assessment against Ogle, her heirs or assigns or the Ogle property.

(Mutual Release ¶ 3.)

The Association puts forward three reasons why this claim should be dismissed. First, the Association argues that it provided electricity in accordance with the Mutual Release when it extended power in front of Ogle's home in 2011. In the Association's reading of the Mutual Release, "[t]here is nothing in the agreement that requires the Association to provide any additional building permits other than the one that they already provided power for. There is certainly no requirement that the Association provide electricity to a 'garage' so Ogle can 'store stuff.'" (Def.'s Mot. Summ. J. 12.) In response, Ogle argues that "[t]here is no additional language in the Mutual Release to support the Association's claim that there are any limits to Ogle's right to require the Association pay for electric service along the road, the only prerequisite is to provide a building permit." (Pl.'s Opp. to Def.'s Mot. Summ. J. 4.) There is no dispute as to the language of the Mutual Release. However, the parties clearly disagree on the basic obligations under the Mutual Release. The Association believes its obligations ceased in 2011 when it brought power to the front of Ogle's home. Ogle, however, seems to believe the Association's obligations continue into perpetuity and are triggered whenever she obtains a building permit to build a structure on her property.

8

The Court is struggling to find where in the summary judgment record the Association has established that it "completed [the electrical service] along the length of Kezar Heights Road[.]" (Mutual Release ¶ 3.) Viewing the language of the Mutual Release in a light most favorable to Ogle, as the non-moving party, a reasonable court could certainly read the language of the Mutual Release—namely 'along the length of Kezar Heights Road'—as requiring the Association to install power along the entire length of Kezar Heights Road, which the Association has not done. Therefore, at this stage in the litigation, the Defendant cannot succeed on this theory.

Next, the Association believes Count I is barred by the statute of limitations. "All civil actions shall be commenced within 6 years after the cause of action accrues . . .." 14 M.R.S. § 752 (2017). "A breach of contract claim accrues when the defendant breaches the contract. More particularly, the breach of contract is cognizable when a party to the contract fails to provide the bargained-for benefit." *York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 18, 200 A.3d 803 (internal quotations and citations omitted). The Court agrees with the Plaintiff that the alleged breach of contract did not occur until the Association voted to deny any further payment for the continuation of electrical service at the November 2016 meeting. Because the complaint was filed in 2018, the Association cannot succeed on this theory.

Finally, the Association argues that this claim is barred by *res judicata*. This simply cannot be. *Res judicata* is triggered when "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Berry v. Mainstream Fin.*, 2019 ME 27, ¶ 8, 202 A.3d 1195 (quoting *Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 20, 175 A.3d 103). The Association points the Court to no cases—let

9

alone any Maine cases—where a court's denial of motions as moot constituted a valid final judgment. Therefore, the Association cannot rely on *res judicata* to have Count I dismissed.

### c. Complaint Count II: Declaratory Judgment (Validity of Liens) and Counterclaim Count I: Breach of Covenant and Contract

Count II asks this Court to enter a declaratory judgment stating that the Association's alleged breach of the Mutual Release justified Ogle's non-payment of assessments, therefore invalidating any liens the Association filed against Ogle.

Ogle argues that she rightfully withheld her dues because the Association materially breached the Mutual Release. Ogle clams that "[o]ne cannot recover sums not paid under a contract 'if the non-paying party seeking damages has materially breached the contract.'" *Porter v. Moosehead Highlands Rd. Maint. Prop. Owners Ass'n*, CV-16-1 (Piscataquis May 24, 2018) (quoting *Island Terrace Owners Ass'n v. Unit 91*, 2012 Me. Super. LEXIS 54). Further, "[a] material breach is non-performance that is so important that the other party is justified in regarding the transaction as having ended." *Id.*

Ogle, however, is attempting to justify her non-payment of association dues—which she owes pursuant to the articles of incorporation—with an alleged breach of a different contract: the Mutual Release. This Court is unaware of any case or settled rule of Contracts Law that would allow for this type of transference between two contracts. Therefore, since there is no dispute of material fact as to the language of the articles of incorporation—which grant the Association the power to impose liens upon members for non-payment of dues—or the dollar amount of said liens, $1852.50 and accruing interest of $147.50 per year, the Association's motion with respect to Count II of the Complaint must be granted.

Therefore, the Count II of the Complaint is hereby dismissed and Count I of the Defendant's Counterclaim is hereby granted.

### d. Complaint Count III: Breach of Contract (Denial of Voting Rights)

In Count III, Ogle argues that the Maine Non-Profit Corporation Act denies the Association the ability to suspend a member's voting rights because the Association's articles of incorporation do not expressly grant the Association the power to do so. The Association argues that the articles of incorporation incorporate the by-laws which expressly grant the Association the power to limit a member's voting rights.

The Maine Non-Profit Corporation Act states that "[t]he right of the members or any class or classes of member to vote may be limited, enlarged or denied to the extent specified in the articles of incorporation." 13-B M.R.S.A. § 604. The relevant provision of the Association's articles of incorporation state that "[t]here are no other provisions of these articles, including provisions for the regulation of the internal affairs of the Corporation . . . other than those set forth in 13-B M.R.S.A. (and the Bylaws of the Corporation as amended from time to time.)." (Def.'s Mot. Summ. J. 17.) The Court agrees with the Association that the Articles of Incorporation successfully incorporate the By-laws. Further, the By-laws expressly state that "[a]ny member whose assessments are in arrears at the date any such meeting is held shall be prohibited from participation or voting at such meeting." (Seventh Amend. of Ass'n. By-laws Art. III, Section 4.)

There is no dispute of material fact as to the language of the By-laws or that Ogle was in arrears at the time she was denied the right to vote at Association meetings. Therefore, the Court must agree with the Association that Count III of Ogle's complaint should be dismissed.

### e. Complaint Count IV: Declaratory Judgment (Road Ownership)

In Count IV of Ogle's complaint, she asks the Court for a declaratory judgment requiring the Association to "release back to Ogle the exact rights it acquired in the Road Deed"; and "a

11

judgment against the Defendant in the amount of damages to be determined at trial, costs and interest". (Pl.'s Compl. 6.)

The Court agrees with the Association, however, that the statute of limitations has long run on this count. Although it was not until 2018 that the Town of Bridgton "gave notice that the conveyance of the road may have violated the subdivision approval that the Town granted to the Kezar Heights subdivision," (Def.'s S.M.F. ¶ 49), the conveyance in question occurred in 2005. This is well past the six-year statute of limitations for civil actions. *See* 14 M.R.S.A. § 762. Further, Ogle was actively involved in the Association at the time of the conveyance, as evidenced by her role as the Clerk. (Def.'s S.M.F. ¶ 7.) Therefore, Ogle should have been on notice in 2005 that the conveyance may have violated the town's subdivision approval. To be even more sure, in 2006, "Ogle said to Mahar that she believed that the deed was fraudulently obtained." (Def.'s S.M.F. ¶ 20.) This shows that Ogle objected to the conveyance back in 2006 and, yet, she waited well past the six-year statute of limitations to file suit.

Therefore, the Court agrees with the Defendant that Count IV of the Plaintiff's complaint should be dismissed.

### f. Counterclaim Count II: Declaratory Judgment

In Counterclaim Count II, the Association asks for the Court to issue a declaratory judgment stating that the Association has fee ownership in the Road; the Association has the right to use and maintain the road; the Association's Bylaws are valid; order Ogle to strike or modify Ogle's Notice to Prevent Easement; and that the Association's assessment of Ogle is consistent with the requirements of the Association's Bylaws.

The Mutual Release plainly addresses some of these issues. First,

> Ogle . . . has remised, released and forever discharged . . . [the Association] . . . of and from any and all claims, debts, liabilities, obligations, demands,

12

damages, actions, causes of action, suits or any other thing done, omitted or suffered to be done, relating to any decisions, votes, adoption of Bylaws and Articles and their respective amendments, assessments or method of calculating assessments, which Ogle may have against [the Association] from the beginning of the world to the date of this Release.

(Mutual Release ¶ 2.) Further, Ogle agreed that "the Fourth Amendment to the By-laws . . . will be enacted and recorded. [Ogle] further agree[d] that the restated articles . . . will be enacted and recorded." *Id.* at ¶ 3. The language of the Mutual Release makes it clear that Ogle agreed that the Fourth Amendment to the By-laws and the restated articles of incorporation were enacted and recorded, therefore, making them valid. Any claim Ogle may have had in regard to the Association documents before the execution of the Mutual Release was signed away by the stroke of her own pen.

Now we come to the issue of Ogle's Notice to Prevent Easement. While there is language in the Notice that challenges the validity of Association documents and the Association's ownership of the Road, this Notice does nothing more than put other's on notice they may not acquire a prescriptive easement. This notice does nothing to degrade the Association's legal rights under the Mutual Release. At this point in the litigation, the Court does not deem it necessary to issue a declaratory judgment compelling Ogle to strike or modify her Notice to Prevent Easement.

In conclusion, because Ogle agreed that the Fourth Amendment to the By-laws and the restated articles were valid and applied to her, it is hereby declared that: 1) the Association has fee ownership in the Road; 2) the Association has the right to use and maintain the Road; 2) the Association's By-laws are valid; and 3) the Association's assessment of Ogle is consistent with the requirements of the Association's By-laws.

IV. **CONCLUSION**

13

In conclusion, because of the expansive nature of the Mutual Release most of these issues have already been decided. Going forward, the only issue to be litigated are the parties' obligations under the Mutual Release as they relate to Count I. All other issues raised in the Complaint and Counterclaims are covered by the Mutual Release.

The entry is:

1. The Defendant's motion for summary judgment as it pertains to Count I of the Plaintiff's Complaint is hereby DENIED.

2. The Defendant's motion for summary judgment as it pertains to Counts II, III, and IV of the Plaintiff's Complaint is hereby GRANTED.

3. The Court hereby DECLARES the following:

   a. The Association has fee ownership in the Road;

   b. The Association has a right to use and maintain the Road;

   c. The Association's By-laws are valid;

   d. The Association's assessment of Ogle is consistent with the requirements of the Association's By-laws; and

   e. The liens placed against Ogle, totaling $1852.50 plus accruing interest of $147.50 per year, are valid.

Pursuant to M.R. Civ. P. 79(a) the Clerk is hereby directed to incorporate this Order by reference in the docket.

Date: 8/18/2020

MaryGay Kennedy
Justice, Superior Court

Entered on the Docket: 8/19/2020

14

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: RE-18-273

DEBORAH L. OGLE,

         Plaintiff,

v.

OVERLOOK ROAD AT
BRIDGTON ASSOCIATION,

         Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 18 2020

RECEIVED

## I.   INTRODUCTION

Before the Court is Deborah L. Ogle's ("Ogle" or "Plaintiff") motion for summary

judgment. Ogle argues that the terms of a settlement agreement between the two parties in this

action are unambiguous and she is entitled to summary judgment as a matter of law. Overlook

Road at Bridgton Association ("Association" or "Defendant") puts forth multiple arguments for

why the Plaintiff's motion should be denied. For the following reasons, the Plaintiff's motion for

summary judgment is hereby denied.

## II.   SUMMARY JUDGMENT RECORD

Ogle is the Trustee of the Deborah Lee Ogle Revocable Trust. ("Trust") (Pl.'s S.M.F. ¶

1.) The Trust owns a parcel of land in the Town of Bridgton, Maine, more particularly described

in the deed form Ogle to the Trust dated August 24, 2005 and recorded in the Cumberland

County Registry of Deeds in Book 23104, Page 319. (Pl.'s S.M.F. ¶ 2.) The Association is a

registered Maine non-profit organization established on February 12, 1996. (Pl.'s S.M.F. ¶ 3.)

The subdivision plan for the Kezar Heights subdivision was approved by the Town of Bridgton Planning Board on July 6, 2004 and recorded in the Cumberland County Registry of Deeds in Plan Book 204, Page 439. (Pl.'s S.M.F. ¶ 4.) The Ogle property is within the Kezar Heights subdivision in Bridgton, Maine. (Pl.'s S.M.F. ¶ 5.) The Ogle property is about 36.15 acres and has approximately 1070 feet of frontage on Kezar Heights Road. (Pl.'s S.M.F. ¶ 6.)

In 2008, the Association initiated a small claims matter against Ogle in Bridgton District Court (BRIDC-SC-2008-110) ("Prior Lawsuit"). (Pl.'s S.M.F. ¶ 7.) The Association prevailed in that lawsuit and Ogle appealed; the matter was then settled through the execution of a settlement agreement ("Mutual Release"). (Pl.'s S.M.F. ¶ 8.) The Mutual Release states the "[t]he parties also agree that the association will pay to have the electrical service completed along the length of Kezar Heights Road and specifically brought in front of Ogle's property when Ogle its successor or assigns receives a building permit for the property at no direct or indirect expense to or as an assessment against Ogle, her heirs or assigns or the Ogle Property." (Pl.'s S.M.F. ¶ 9.) As part of the settlement, the parties agreed to comprehensive amendments to both the Bylaws and the Articles of Incorporation; specifically, the Mutual Release provided that the Fourth Amendment to the Bylaws and the restated articles were to be enacted and recorded. (Def.'s S.A.M.F. ¶ 11.) Those amendments made it clear that the residents of the White Mountain Way were part of the Association, that Ogle had the rights and obligations of a member of the Association, and the powers of the Association to make assessments for the ownership, operation, and use of the Road. (Def.'s S.A.M.F. ¶ 12.)

In 2011, Ogle received a building permit from the Town of Bridgton to build a residence on the western side of her property, and, pursuant to the Mutual Release, the Association paid to have electrical service brought to a point on the Ogle Property approximately 215 feet along

2

Kezar Heights Road, which reached in front of Ogle's home. (Pl.'s S.M.F. ¶ 10; Def.'s S.A.M.F. ¶ 1.) The electrical service stops at the Ogle residence and does not continue to the end of Kezar Heights Road where it meets Knights Hill Road. (Pl.'s S.M.F. ¶ 11; Def.'s S.A.M.F. ¶ 5.)

In 2016, Ogle received a building permit from the Town of Bridgton for a structure on the eastern side of the Ogle Property. (Pl.'s S.M.F. ¶ 12.) Ogle testified that she obtained the building permit to build a garage. (Def.'s S.A.M.F. ¶ 2.) On or about July 10, 2016, Ogle provided a copy of the building permit to the Association and, pursuant to the Mutual Release, requested to have the cost of the electrical service to the proposed structure paid for by the Association. (Pl.'s S.M.F. ¶ 13.) On or about November 6, 2016 the Association voted to ". . . take no action to fulfill the Ogle request . . ." because the Association believed it had already fulfilled its obligation under the Mutual Release. (Pl.'s S.M.F. ¶ 14; Def.'s S.A.M.F. ¶ 3.) Electrical service in the subdivision starts at the northern end of Kezar Heights Road where it intersects with Knights Hill Road and extends until it ends at the western side of the Ogle Property." (Pl.'s S.M.F. ¶ 15.) Ogle's property is the last lot along the Kezar Heights Road that does not also border a public road. (Pl.'s S.M.F. ¶ 16.) Extending the electricity along the entire length of Kezar Heights Road, as described by the Plaintiff in their motion would mean extending it along the length of the Ogle property, along the length of the Hague property, to Knights Hill Road forming a semicircle. (Def.'s S.A.M.F. ¶ 4.) Ogle was asked in an interrogatory for all information regarding her damages and she stated she lost an agreement for the construction of the garage, that she could not sell lots without electricity, the cost of the building permit, and attorney's fees. (Def.'s S.A.M.F. ¶ 6.) At her deposition, Ogle could not put any value on any of the categories of damages except for the $25 building permit. (Def.'s S.A.M.F. ¶ 7.)

3

Finally, Ogle is currently in arrears on her assessments. (Def.'s S.A.M.F. ¶ 15.) Ogle previously filed a Motion to Enforce the Mutual Release, however, the court denied her motion, along with a motion from the Association, as moot. (Def.'s S.A.M.F. ¶¶ 16-17.)

III. **ANALYSIS**

a. Summary Judgment Standard

Summary judgment is not a substitute for trial when a material fact is in dispute, *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, nor an arena for trial by affidavit, *Hutz v. Alden*, 2011 ME 27, ¶ 16, 12 A.3d 1174. Instead, summary judgment is proper only when a review of the parties' statements of material facts and the record evidence to which they refer, considered in the light most favorable to a nonmoving party, establishes that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Estate of Kay v. Estate of Wiggins*, 2016 ME 108, ¶ 9, 143 A.3d 1290. A contested fact is "material" if has the potential to influence the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. A "genuine" issue of material fact exists if the factfinder must decide between competing versions of the truth. *Lewis*, 2014 ME 34, 87 A.3d 732. Judgment as a matter of law is not warranted if "any reasonable view of the evidence could sustain a verdict for the opposing party pursuant to the substantive law that is an essential element of the claim." *Merriam v. Wanger*, 2000 ME 159, ¶ 7, 757 A.2d 778. When material facts are contested, the dispute must be resolved through fact-finding at trial— "even if the likelihood of success at trial by one party or another is small." *Rose v. Parsons*, 2014 ME 73, ¶ 4, 118 A.3d 220; *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

If a properly supported motion is filed, then the burden shifts to the nonmoving party to demonstrate that a factual dispute exists sufficient to establish a prima facie case

for each element of the claim or defense in order to avoid summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. The evidence proffered by the nonmoving party is assessed for sufficiency—not persuasiveness—such that a court can make a factual determination without speculating. *Estate of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

### b. Complaint Count I

Ogle's motion for summary judgment comes down to the issue of whether or not the relevant provision of the Mutual Release is unambiguous and, if it is unambiguous, whether or not the language supports her reading. In her motion for summary judgment, Ogle argues that the Mutual Release is in fact unambiguous and that the Association must pay to have electrical service along the entire length of Kezar Heights Road. The Association argues that Count I is barred by the statute of limitations; the Association met its obligation under the Mutual Release as a matter of law; plaintiff cannot seek to recover for breach of contract when she has not substantially complied with the contract; Count I is barred by *res judicata*; and the Plaintiff has not provided evidence of any damages.

Whether or not a contract is ambiguous is a matter of law. *Hare v. Lumbermens Mutual Casualty Company*, 471 A.2d 1041, 1044 (Me. 1984). "The interpretation of an unambiguous contract is a matter of law." *Chadwick-BaRoss, Inc. v. T. Buck Constr. Inc.*, 627 A.2d 532, 534 (Me. 1993). A contract is considered to be ambiguous when it is reasonably susceptible to different interpretations. *Id.*

Viewing the relevant language of the Mutual Release in a light most favorable to the Association, as the non-moving party, the Court believes that the language is ambiguous. Reasonable courts could certainly disagree on the meaning of ". . . along the length of Kezar

5

Heights Road and specifically brought in front of Ogle's property when Ogle its successor or assigns receives a building permit for the property . . .." (Pl.'s S.M.F. ¶ 9.) One court could agree with Ogle that 'along the length of Kezar Heights Road' means that the Association is required to install electrical service along the entirety of Kezar Heights Road.¹ However, another reasonable court could rightfully question the purpose and utility of the language that states "and specifically brought in front of Ogle's property when Ogle its successor or assigns receives a building permit for the property" when considered in context of the entire Mutual Release. Further, if the language of the Mutual Release meant what Ogle says it does, why would she not insist that the electricity be extended along the entire length of Kezar Heights Road when she obtained a building permit back in 2011? It would also be curious why the Association's obligation to extend property beyond the Ogle Property would be triggered by the condition of Ogle obtaining a building permit for her property. Viewing the language of the Mutual Release in the light most favorable to the non-moving party, the Court finds the relevant provision of the Mutual Release to be ambiguous. Therefore, the Court hereby denies Ogle's motion for summary judgment.

IV. **CONCLUSION**

In conclusion, the parties have very different views on the other's obligations under the Mutual Release. The language of the relevant provision could reasonably support multiple constructions which renders this issue unsuitable for summary judgment.

---

¹ Interestingly, the Association actually uses the phrase 'along the length of' to mean 'along the entire length of' in its statement of material fact. In Def.'s S.A.M.F. ¶ 4, the Association states that "[e]xtending the electricity along the entire length of Kezar Heights Road . . . would mean extending it *along the length of* the Ogle property [and] *along the length of* the Hague property . . .." In the scenario where electricity is extended 'along the entire length' of Kezar Heights Road, the electricity would also be extended along the entire length of the Ogle and Hague properties; or, as the Association puts it, 'along the length of' the Ogle and Hague properties.

6

The entry is:

1. Plaintiff's Motion to for Summary Judgment is hereby DENIED.


Pursuant to M.R. Civ. P. 79(a) the Clerk is hereby directed to incorporate this Order by reference in the docket.

Date: 8/18/2020

MaryGay Kennedy
Justice, Superior Court


Entered on the Docket: 8/19/2020

7